STATE OF NORTH CAROLINA v. JOHN EDWARD BREWINGTON

No. COA09-956

(Filed 18 May 2010)

**Constitutional Law— right to confront witnesses—report of drug test**

The trial court erred by admitting over defendant's constitutional objection testimony from an SBI agent about a drug analysis performed by another agent. The witness's determination that she would have come to the same conclusion as the testing analyst was not an independent expert opinion arising from the observation and analysis of raw data; defendant could only hope to attack on cross-examination pure assumptions about whether procedures were properly followed during the testing process. The evidence was prejudicial because the only other evidence concerning the substance found was the officer's testimony that he believed it to be cocaine.

Appeal by defendant from judgment entered 13 February 2009 by Judge Arnold O. Jones, II, in Wayne County Superior Court. Heard in the Court of Appeals 10 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Lisa Bradley Dawson, for the State.*

*Lucas & Ellis, PLLC, by Anna S. Lucas, for defendant appellant.*

HUNTER, JR., Robert N., Judge.

Defendant John Edward Brewington ("defendant") appeals from a judgment finding him guilty of possessing cocaine. Defendant argues on appeal that the trial court erred by allowing the State's expert forensic chemist to offer an opinion as to the composition of the contraband substance in issue because the testifying expert was not the expert that conducted the analysis of the substance. After careful review, we hold that the expert testimony should have been excluded, and award defendant a new trial.

## I. BACKGROUND

On 1 December 2008, a grand jury returned a true bill of indictment against defendant charging him with possession of a controlled substance. Defendant pled not guilty, and the trial commenced on 12 February 2009.

The State's evidence tended to show that on 18 January 2008, defendant was stopped on the street by Officer James Serlick of the Goldsboro Police Department for riding a bicycle with no reflective lights. Officer Serlick advised defendant that it was unlawful to operate a bicycle without reflectors, and asked if defendant would consent to being searched. Defendant consented, and during the course of the search, a napkin fell out of one of defendant's socks. Officer Serlick testified that when he looked inside the napkin, he discovered an "offwhite rock like substance, what [he] believed to be cocaine." Officer Serlick testified that he placed defendant under arrest for possession of a controlled substance, and transported him to the magistrate's office. After delivering defendant to the jail, Officer Serlick completed the necessary paperwork and secured the "rock like substance" in the police department evidence locker.

Officer Robert Smith, an evidence technician at the Goldsboro Police Department, testified that he and another officer later retrieved the evidence placed in the locker and packaged it to be sent to the State Bureau of Investigation ("SBI") for analysis. Officer Smith testified that he received the evidence back from the SBI on 9 May 2008, along with the written results of the analysis conducted by the SBI.

SBI Special Agent Kathleen Schell was tendered as an expert witness in forensic chemistry, and testified regarding the testing of the "offwhite rock like substance." Defendant objected to the testimony of Special Agent Schell on Sixth Amendment grounds, and argued

that the testimony should be excluded because Special Agent Schell was not the expert that actually conducted the testing. Defendant contended that he was entitled to cross-examine the testing expert under the Confrontation Clause. The trial court allowed an extensive *voir dire* of Special Agent Schell, but declined to rule on defendant's motion. Thereafter, the jury was brought back into the courtroom, and after further direct examination by the State, the trial court qualified Special Agent Schell as an expert in forensic chemistry. Court was then recessed until the following morning.

On 13 February 2009, the trial court opened proceedings with further *voir dire* of Special Agent Schell. After hearing final arguments from each side, the trial court denied defendant's motion, citing *State v. Delaney*, 171 N.C. App. 141, 613 S.E.2d 699 (2005); *State v. Jones*, No. COA03-976, 2004 N.C. App. LEXIS 1655, 2004 WL 1964890 (N.C. Ct. App., Sept. 7, 2004) (unpublished); and *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984). Applying these cases, the trial court ruled that admitting Special Agent Schell's testimony did not violate the Confrontation Clause of the Sixth Amendment.

After testifying in detail about routine SBI lab procedures, Special Agent Schell offered the following testimony.

Q. And who, according to the information that you located in the computer, who analyzed the sample containing State's Exhibit 1B?

A. Nancy Gregory.

. . . .

Q. And according to the lab notes, if you'll just right now list them. What types of tests were performed on this sample?

A. There were two preliminary color tests, a preliminary crystal test and a more specific instrumental analysis test that was conducted on this piece of evidence.

. . . .

Q. And from the notes that you retrieved were you able to determine what the result was of this particular color test?

A. In this particular color test it did not turn any color.

Q. And based on your training and experience, what does that indicate?

STATE v. BREWINGTON

[204 N.C. App. 68 (2010)]

A. That indicates that such drugs like heroin, which would turn purple for this test; or methamphetamine, which would turn orange, are not present. We're looking for something that doesn't turn this particular color test a color.

. . . .

Q. And when you reviewed this particular case, did you see the result of this [second] test?

A. I did.

Q. And what was the result of that test?

A. It turned blue.

Q. And based on your training and experience, what does that mean?

A. It means that those specific chemical groups are present.

Q. What was the next test that was performed?

A. The next test was a crystal test.

. . . .

Q. And based on your review of the lab report, were you able to determine what the result was of this particular test?

A. Yes, crosses were obtained. Those specific crosses were obtained.

Q. And what does that result mean to you as a chemical analyst?

A. It indicates that cocaine is present.

. . . .

Q. [T]he testing that Agent Gregory did on April 9 of 2008, was that reviewed by anyone else at the State Bureau of Investigation Laboratory?

A. It was reviewed by the supervisor of the Drug Chemistry Section, Ann Hamlin.

. . . .

Q. Now have you reviewed the testing procedures that you've described and the results of the examinations of the test yourself?

A. I have.

Q. And have you also reviewed Agent Gregory's conclusion?

A. I have.

Q. Have you formed an opinion as to the item that was submitted inside the plastic bag that's been marked as State's Exhibit 1B?

A. I have.

Q. And what is your opinion based on?

A. Based upon all the data that she [Agent Gregory] obtained from the analysis of that particular item, State's Exhibit 1B, I would have come to the same conclusion that she did.

Q. And what is your opinion as to the identity of the substance that was submitted as State's Exhibit 1B?

MR. GURLEY: Just objection for the record, Judge.

THE COURT: I'll overrule the objection. You can answer the question.

A. State's Exhibit 1B is the Schedule II controlled substance cocaine base. It had a weight of 0.1 gram.

The jury convicted defendant of possession of cocaine on 13 February 2009, and defendant gave oral notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

Jurisdiction in this Court is proper pursuant to N.C. Gen. Stat. § 7A-27(b) (2009). This Court reviews alleged violations of constitutional rights *de novo. State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007). If a defendant shows that an error has occurred, the State bears the burden of proving the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2009). Under the *de novo* standard of review, this Court "considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)).

## III. ANALYSIS

On appeal, defendant argues that it was reversible error for the trial court to allow the testimony of Special Agent Schell as to the

identity of the substance contained in State's Exhibit 1B. Defendant argues that by permitting Special Agent Schell to testify as to her opinion regarding the substance based solely on testing conducted by Agent Gregory, defendant was denied his right under the Sixth Amendment to meaningfully confront the witness against him, Agent Gregory. We agree.

"The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004)). The U.S. Supreme Court has recently applied the holding in *Crawford* to documents or reports that the government seeks to enter into evidence that are "testimonial" in nature, holding that "[t]he Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence [is] error." *Melendez-Diaz v. Massachusetts*, 557 U.S. ——, 174 L. Ed. 2d 314, 332 (2009).

In *Melendez-Diaz*, the government sought to introduce "certificates of analysis" as evidence that a substance was cocaine. The Supreme Court held that the "certificates of analysis" prepared by a forensic analyst for trial were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id.* at ——, 174 L. Ed. 2d at 321 (quoting *Davis v. Washington*, 547 U.S. 813, 830, 165 L. Ed. 2d 224, 242 (2006)).

In the case *sub judice*, we are faced not with the State's attempt to introduce the documents themselves as proof of the identity of a substance, but the testimony of an expert allegedly relying on such documents as the basis for her opinion. The North Carolina Supreme Court has squarely addressed the issue of expert testimony based on reports prepared by other, non-testifying experts in *State v. Locklear*, 363 N.C. 438, 681 S.E.2d 293 (2009). In that case, the North Carolina Supreme Court applied the holding of *Melendez-Diaz* to the in-court testimony of an expert who relied on the contents of "testimonial" reports prepared by forensic examiners. The *Locklear* Court held that

> [t]he [*Melendez-Diaz*] Court determined that forensic analyses qualify as "testimonial" statements, and forensic analysts are "witnesses" to which the Confrontation Clause applies. The Court specifically referenced autopsy examinations as one such kind of forensic analyses. Thus, when the State seeks to intro-

duce forensic analyses, "[a]bsent a showing that the analysts [are] unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them" such evidence is inadmissible under *Crawford*.

*Id.* at 452, 681 S.E.2d at 304-05 (quoting *Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 322).

The *Locklear* Court made clear that, like the certificates of analysis at issue in *Melendez-Diaz*, the contents of the reports were "testimonial," and the defendant had the right to confront the expert that had prepared the report, and who in effect was "testifying" through that report. *Locklear*, 363 N.C. at 452, 681 S.E.2d at 304-05.

This Court has applied the *Locklear* extension of *Melendez-Diaz* in several decisions relevant to this appeal. In *State v. Galindo*, —— N.C. App. ——, 683 S.E.2d 785 (2009), this Court held that the trial court erred in admitting the testimony of chemist Michael Aldridge, where the record showed that Aldridge

had been the supervisor of the lab for 20 years. Aldridge testified that although he did not personally weigh or observe the weighing of the seized cocaine, as part of his supervisory duties he calibrated the scale on which it was weighed both the month before and after it was weighed and found that the scale was in "perfect working order." When asked, Aldridge stated that the analyst that had identified and weighed the cocaine and prepared the lab report was currently working in a crime lab in South Carolina and that she had not been subpoenaed to testify.

Aldridge explained the chain of custody procedures at the lab and stated that they had been followed in this case. Aldridge stated that the lab's analysis procedures exceeded industry standards and that the types of tests performed and recorded in the lab's reports are relied upon by experts in the field of forensic chemistry. Aldridge then went on to testify that in his opinion—based "solely" on the lab report—the substances seized from the West Ridge Road residence were, in fact, marijuana and cocaine. With respect to the cocaine, Aldridge gave his opinion—over defendant's objections—that approximately 1031.83 grams of cocaine [were] found in various parcels.

*Galindo*, —— N.C. App. at ——, 683 S.E.2d at 787. Though we held that admission of Aldridge's testimony was error, we did not reverse defendant's conviction because the State succeeded in meeting its

burden on appeal that the error was harmless beyond a reasonable doubt based on other evidence adduced at trial. *Id.* at ——, 683 S.E.2d at 788-89.

After *Galindo*, this Court held in *State v. Mobley*, —— N.C. App. ——, 684 S.E.2d 508 (2009), *disc. review denied*, 363 N.C. 809, —— S.E.2d —— (2010), that a forensic DNA analyst's expert opinion was admissible because the expert merely *based* her opinion on otherwise inadmissible testimonial hearsay documents. In reviewing the DNA expert's testimony under a plain error standard of review via Rule 2 of the North Carolina Rules of Appellate Procedure, this Court observed that the State's expert "testified not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data." *Mobley*, —— N.C. App. at ——, 684 S.E.2d at 511.

*State v. Davis*, —— N.C. App. ——, 688 S.E.2d 829 (2010) followed *Galindo* and *Mobley*. In that case, we upheld defendant's convictions for possession with intent to sell or deliver cocaine and sale of cocaine, in part, because defense counsel at trial failed to object to the forensic expert's testimony on Sixth Amendment grounds. *Id.* at ——, 688 S.E.2d at 834 ("As Defendant failed to object at trial to any of the aforementioned testimony, Defendant failed to preserve for appeal the argument that the evidence was erroneously admitted."). Since the defendant in *Davis* failed to object to "copious" evidence at trial showing that the confiscated substance was crack cocaine—including the forensic chemist's expert testimony based purely on underlying tests not performed by the testifying expert—we held that admission of the underlying testimonial report was harmless beyond a reasonable doubt. *Id.* at ——, 688 S.E.2d at 835 ("[W]e conclude that, even if Aldridge's laboratory report was erroneously admitted, such error was harmless beyond a reasonable doubt in view of the copious—indeed, overwhelming—unchallenged evidence establishing that the substance at issue was crack cocaine.").

This Court distinguished *Galindo* and applied the *Mobley* exception in a new factual context in *State v. Hough*, —— N.C. App. ——, 690 S.E.2d 285 (2010). In *Hough*, we held that the admission of expert forensic testimony on the issue of whether several confiscated substances were, in fact, marijuana and cocaine was not plain error under *Locklear*. *Id.* at ——, 690 S.E.2d at 291. Despite the fact that the testifying expert in *Hough* did not conduct the tests on the contraband in issue, we concluded that the testifying expert conducted a

"peer review" of her colleague's work, such that *Galindo* did not preclude admission of the forensic expert's testimony.

> The report at issue in this case formed the basis of Alloway's expert opinion, but was not offered for the proof of the matter asserted and was not prima facie evidence that the substances recovered from the crime scene were, in fact, marijuana and cocaine. It is not our position that every "peer review" will suffice to establish that the testifying expert is testifying to his or her expert opinion; however, in this case, we hold that Alloway's testimony was sufficient to establish that her expert opinion was based on her own analysis of the lab reports.

*Id.*

In the most recent case in this series, *State v. Brennan*, this Court held that an expert's "peer review" of drug testing procedures by a testing analyst was not admissible evidence. No. COA09-1362, 2010 WL 1753339, *3-4 (N.C. Ct. App., May 4, 2010). In concluding that the forensic expert chemist's "peer review" failed to qualify as an admissible independent opinion at trial, this Court stated:

> It is obvious from the above-excerpted testimony that Agent Icard was merely reporting the results of other experts. We cannot conclude from this, as this Court did in *Mobley*, that "the underlying report, which would be testimonial on its own, is used as a basis for the opinion of an expert who independently reviewed and confirmed the results, and is therefore not offered for the proof of the matter asserted under North Carolina case law." *Id.* at ——, 684 S.E.2d at 512. On the contrary, as Agent Icard explained on cross-examination, her "review" consisted entirely of testifying in accordance with what the underlying report indicated. Although there is some indication that Agent Knott was unavailable due to illness, there is no indication in the record of any prior opportunity by Defendant to cross-examine Agent Knott.
>
> Agent Icard did no independent research to confirm Agent Knott's results; in fact, she saw the substance for the first time in open court when she testified to what—in her expert opinion—it was. Such expertise is manifestly no more reliable than lay opinion based on a visual inspection of suspected powder cocaine, such as has been deemed inadmissible. *See State v. Llamas-Hernandez*, 189 N.C. App. 640, 652, 659 S.E.2d 79, 86 (2008) (Steelman, J., dissenting), *rev'd for reasons stated in the dissent*,

363 N.C. 8, 673 S.E.2d 658 (2009) (per curiam). Insofar as Agent Icard testified to Agent Knott's results, the testimony violated Defendant's constitutional rights as interpreted in *Melendez-Diaz* and *Locklear*.

*Id.* at *4.

In making our decision here, we believe it is paramount to revisit *Melendez-Diaz* to ensure clarity. We believe that *Melendez-Diaz* and *Locklear*, without further influence, clearly resolve the admissibility of (1) an expert utilizing data collected by another person to form an independent opinion and (2) the impermissible reiteration of another's findings and conclusions. The Supreme Court in *Melendez-Diaz* stated that the foundation for a Confrontation Clause analysis is as follows:

> "[T]he [Confrontation] Clause's ultimate goal is to ensure *reliability* of evidence, but it is a *procedural* rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . . Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

*Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 326 (emphasis added) (citation omitted). The Supreme Court went on to say that "[a] forensic analyst responding to a request from a law enforcement official may feel pressure—or have an incentive—to alter the evidence in a manner favorable to the prosecution." *Id.* The Court explained that "[c]onfrontation is one means of assuring accurate forensic analysis. While it is true, as the dissent notes, that an honest analyst will not alter his testimony when forced to confront the defendant . . . the same cannot be said of the fraudulent analyst." *Id.* "Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony." *Id.* "Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. Serious deficiencies have been found in the forensic evidence used in criminal trials." *Id.* at ——, 174 L. Ed. 2d at 326-27. "Like expert witnesses generally, an analyst's lack of proper training or deficiency in judgment may be disclosed in cross-examination." *Id.* at ——, 174 L. Ed. 2d at 327.

STATE v. BREWINGTON

[204 N.C. App. 68 (2010)]

These excerpts make clear that the purpose of requiring the analysts themselves testify is so that their honesty, competence, and the care *with which they conducted the tests* in question could be exposed to " 'testing in the crucible of cross-examination.' " *Id.* at ——, 174 L. Ed. 2d at 326 (citation omitted). Thus, to allow a testifying expert to reiterate the conclusions of a non-testifying expert would eviscerate the protection of the Confrontation Clause.

Here, the question of whether the Sixth Amendment rights of defendant were violated turns on whether Special Agent Schell offered an independent expert opinion as to the chemical composition of the State's evidence or whether she merely summarized the findings of Agent Gregory. If Special Agent Schell simply offered the opinion contained in Agent Gregory's report—the type of report that the Supreme Court held to be "testimonial" in *Melendez-Diaz* and that the North Carolina Supreme Court held to be inadmissible through a testifying expert in Locklear—then the defendant's right to confrontation was implicated and violated. If, however, Special Agent Schell offered her own expert opinion based on independent analysis, then her use of the underlying report prepared by Agent Gregory as a source of data facilitating that analysis would not violate defendant's right to confrontation.

Applying the rules articulated in *Melendez-Diaz* and *Locklear* to the case at bar, a four-part inquiry[1] is necessary: (1) determine whether the document at issue is testimonial; (2) if the document is testimonial, ascertain whether the declarant was unavailable at trial and defendant was given a prior opportunity to cross-examine the declarant; (3) if the defendant was not afforded the opportunity to cross-examine the unavailable declarant, decide whether the testifying expert was offering an independent opinion or merely summarizing another non-testifying expert's report or analysis; and (4) if the testifying expert summarized another non-testifying expert's report or analysis, determine whether the admission of the document through another testifying expert is reversible error.

In this case, the law is clear that the report utilized by Special Agent Schell was testimonial in nature. *Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 321 (testimonial evidence includes " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be

---

1. For an explanation on the genesis of this inquiry, see *State v. Conley*, COA09-456, 2010 WL 157554 (Jan. 5, 2010) (unpublished) and *State v. King*, COA09-524, 2010 WL 521022 (Feb. 16, 2010) (unpublished).

available for use at a later trial' ") (citation omitted). Moreover, there is nothing in the record to suggest that the State claimed that Agent Gregory was unavailable and defendant had a previous opportunity to cross-examine Agent Gregory. Accordingly, we conclude that Agent Gregory's report was inadmissible testimonial evidence, so we next examine whether Special Agent Schell's testimony based on Agent Gregory's report was an independent expert opinion or merely a summation of inadmissible testimonial evidence.

Special Agent Schell testified extensively at trial about the testing procedures that are typically adhered to at the SBI lab. She testified regarding the manner in which tests are conducted in the regular course of business. However, the following exchange that occurred between Special Agent Schell and defense counsel on cross-examination is revealing:

Q. Okay. And it's true that you did not perform any of the tests on this evidence; is that correct?

A. It is. I did not perform these tests.

Q. So you didn't do any color test that came back negative—or the first test in this case you said didn't show any color change; is that right?

A. That's correct.

Q. So it didn't test—it didn't test positive on the first test. The second test you didn't observe any part of this evidence put in a liquid and turn blue.

A. I did not, but these are tests that are commonly performed in our section.

Q. Right. But my point is you didn't do this test so you don't know; you didn't see it turn blue for yourself.

A. I did not, no.

Q. Okay. And the crystal test, you didn't look through the slide that was where a part of the evidence was mixed with a liquid and showed cross crystals. You didn't actually see that, did you?

A. I did not, no.

Q. And the last test about the graph that had to be cleaned up, you didn't see this actual result being cleaned up or see the test performed, did you?

A. I did not see the test performed, but I have the data that Nancy Gregory obtained.

It is clear from the testimony of Special Agent Schell that she had no part in conducting any testing of the substance, nor did she conduct any independent analysis of *the substance*. She merely reviewed the reported findings of Agent Gregory, and testified that if Agent Gregory followed procedures, and if Agent Gregory did not make any mistakes, and if Agent Gregory did not deliberately falsify or alter the findings, then Special Agent Schell "would have come to the same conclusion that she did." As the Supreme Court clearly established in *Melendez-Diaz*, it is precisely these "ifs" that need to be explored upon cross-examination to test the reliability of the evidence. *Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 327 (methodology that forensic drug analysts use "requires the exercise of judgment and presents a risk of error that might be explored on cross-examination"). Special Agent Schell could not have answered these questions because she conducted no independent analysis. She testified exclusively as to the tests that Agent Gregory claimed to have performed, and used testimonial documents not admissible under *Melendez-Diaz*. Her conclusion that she agreed with Agent Gregory's analysis assumes that Agent Gregory conducted the tests in the same manner that Special Agent Schell would have; however, the record shows that Special Agent Schell had no such actual knowledge of Agent Gregory's actions during the testing process.

The State's attempt to posture Special Agent Schell's testimony as an admissible "peer review" both at trial and on appeal is not persuasive. In the end, the transcript of the trial shows that the testimonial document prepared by Agent Gregory was admitted into evidence against defendant for the substantive purpose of showing that the contraband seized was cocaine. This end was achieved through the testimony of Special Agent Schell. Under *Melendez-Diaz* and *Locklear*, we are bound to conclude that this testimony was admitted in violation of defendant's right under the Confrontation Clause of the Sixth Amendment.

In reaching this conclusion under these particular facts, we believe that the facts of this case are closer to those in *Brennan* rather than those in *Hough*. We believe that the *Hough* Court correctly stated that not "every 'peer review' will suffice to establish that the testifying expert is testifying to his or her expert opinion[.]" *Hough*, —— N.C. App. at ——, 690 S.E.2d at 291. Though the *Hough* Court did not further explain under what circumstances a "peer

review" would skirt the edges of a constitutional violation and thus avoid the mandate of *Melendez-Diaz*, we believe that this case presents such a situation.

In *Melendez-Diaz*, Justice Scalia addressed a portion of the dissenting opinion—in which Justice Kennedy insisted that the "certificates of analysis" were admissible—because the certificates were akin to admissible authentications produced by a clerk of court at common law. In disagreeing with the dissent's position, Justice Scalia explained the scope of the clerk's ability to provide evidence through the authenticating document in the context of the Confrontation Clause:

> The dissent identifies a single class of evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record—or a copy thereof—for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permied "to certify to the correctness of a copy of a record kept in his office," but had "no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect." The dissent suggests that the fact that this exception was " 'narrowly circumscribed' " makes no difference. To the contrary, it makes all the difference in the world. It shows that even the line of cases establishing the one narrow exception the dissent has been able to identify simultaneously vindicates the general rule applicable to the present case. A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant.

> Far more probative here are those cases in which the prosecution sought to admit into evidence a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it. Like the testimony of the analysts in this case, the clerk's statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched. Although the clerk's certificate would qualify as an official record under respondent's definition—it was prepared by a public officer in the regular course of his official duties—and although the clerk was certainly not a "conventional witness" under the dissent's approach, the clerk was nonetheless subject to confrontation.

*Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 328-29 (footnotes and citations omitted).

This same distinction is applicable here. If the *substance* of a testimonial document is to be admitted into evidence, the author of the testimonial document must be subjected to confrontation either (1) before trial if he or she is unavailable and defendant chooses to exercise his right or (2) during trial if he or she is available. If a third party, such as an expert, wishes to give testimony concerning the contents of a testimonial document, he or she may take one of two permissible approaches: (1) "certify" the correctness of the testimonial document without offering either an "interpretation of what the record contains or shows" or a certification "to its substance or effect," *id.* at ——, 174 L. Ed. 2d at 328; or (2) render an opinion independent of the substance of the testimonial document such that the information in the document is not being offered for the truth of the matter asserted.

It is precisely these principles that support the divergent directions of *Mobley* and *Brennan*. As *Mobley* explains in detail, a forensic DNA analyst must perform an independent analysis of raw data to form their expert opinion. *Mobley*, —— N.C. App. at ——, 684 S.E.2d at 511-12. In this process, the underlying DNA data collectors do not reach their own conclusions that are then merely reviewed by the forensic expert based solely on a cold record. *Id.* This contrasts starkly with the process utilized in this case.

As Special Agent Schell testified, her expert opinion could go no further than the determination that she "would have come to the same conclusion" as the testing analyst. This, as *Brennan* correctly holds, is not an independent expert opinion arising from the observation and analysis of raw data. Unlike an analysis of DNA data, there is no opportunity for a meaningful cross-examination of testimony concerning the results of a drug test, and a defendant presented with such damning evidence can only hope to attack pure assumptions on whether procedures were properly followed during the forensic testing process. As the Supreme Court explained in *Melendez-Diaz*, it is this sort of accountability, placed directly on the testing analyst, that the Sixth Amendment requires. It was therefore error to allow Special Agent Schell to testify concerning the composition of the confiscated substance at issue in this case.

We now turn to the question of whether this error requires reversal. The only other evidence offered by the State at trial concern-

ing the composition of the "offwhite rock like substance" was Officer Serlick's testimony.

Q.  And what happened next?

A.  . . . I picked the napkin up, looked inside the napkin and saw an offwhite rock like substance, what I *believed* to be cocaine.

(Emphasis added.)

Unlike *Galindo* and *Davis*, this evidence is not sufficient to show that the admission of Special Agent Schell's testimony was harmless beyond a reasonable doubt. *State v. Lewis*, 361 N.C. 541, 549, 648 S.E.2d 824, 830 (2007) (" 'A violation of the defendant's rights under the Constitution of the United States is prejudicial unless . . . it was harmless beyond a reasonable doubt.' ") (quoting N.C.G.S. § 15A-1443(b) (2005)). Absent any concrete evidence or testimony that the substance in question was indeed cocaine, it is possible that the jury could have reached a different conclusion regarding the guilt of defendant on the charge of possession of cocaine. We therefore agree with defendant that he should be awarded a new trial.

## IV.  CONCLUSION

The trial court erred in admitting the testimony of Special Agent Schell over defendant's constitutional objection. Because the State has not shown that the error was harmless beyond a reasonable doubt, defendant is deserving of a new trial.

New trial.

Judges STROUD and ERVIN concur.