STATE v. WHITTINGTON

[221 N.C. App. 403 (2012)]

STATE OF NORTH CAROLINA v. GLENN EDWARD WHITTINGTON

No. COA11-1197

(Filed 19 June 2012)

**1. Indictment and Information—fatally defective indict-
ment—trafficking in opium by sale—trafficking in opium
by delivery—failure to specifically identify person who
bought drugs**

The trial court lacked subject matter jurisdiction over the
charge of trafficking in opium by sale based on a fatally defective
indictment. The indictment failed to identify specifically the per-
son to whom the opium was sold. Further, the Court of Appeals
determined *ex mero motu* that the indictment for trafficking by
delivery was similarly defective. Thus, the judgments for both of
these counts were vacated.

**2. Constitutional Law—right to confrontation—admission of
lab report without testimony of chemical analyst—failure
to deliver lab report by required time—no waiver**

The trial court erred in a drugs case by admitting a lab report
without the testimony of the chemical analyst who performed the
testing. The record failed to show that the State sent defendant a
copy of the lab report by the required time before trial, and thus,
defendant did not waive his constitutional right to confront the
chemical analyst who prepared the lab report.

Appeal by Defendant from judgment entered 7 April 2011 by
Judge Quentin T. Sumner in Superior Court, Nash County. Heard in
the Court of Appeals 6 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General
Kimberly N. Callahan, for the State.*

*Currin & Currin, by George B. Currin, for Defendant.*

McGEE, Judge.

Glenn Edward Whittington (Defendant) was indicted on three
counts of trafficking in opium on 11 May 2009: Count I, trafficking in
opium by sale; Count II, trafficking in opium by delivery; and Count
III, trafficking in opium by possession.

Sergeant Phillip Lewis (Sergeant Lewis), an investigator with the narcotics division of the Nash County Sheriff's Office, supervised a controlled drug transaction (the transaction) between Defendant and Joey Sullivan (Sullivan) on 2 July 2008. Sergeant Lewis instructed Sullivan on how to conduct the transaction, and gave Sullivan the money to use in the transaction. Sullivan then drove to the house where Defendant was located, and Defendant let Sullivan inside the house. Sullivan handed Defendant $560.00 in exchange for sixteen pills. The transaction was recorded on audio and video. The pills were sent to the State Bureau of Investigation (SBI) for analysis. Defendant was subsequently arrested.

A lab report (the lab report) dated 8 December 2009, prepared by Brittany Dewell (Dewell), a chemical analyst, identified the pills as: "Oxycodone—Schedule II Opium Derivative. Weight of tablets—4.3 grams." The State filed a "Request for Voluntary Discovery" on 15 February 2010 and, in that document, notified Defendant that it intended "to introduce the following evidence in the trial of the above referenced criminal case: . . . . Pursuant to G.S. § 90-95(g), any and all reports prepared by the N.C. State Bureau of Investigation concerning the analysis of substances seized in the above-captioned case. A copy of report(s) will be delivered upon request." There is no record evidence that Defendant specifically requested a copy of any reports.

At trial, when the State sought to offer the lab report into evidence without calling Dewell, the chemical analyst who had produced the lab report, Defendant objected. Defendant argued that introducing the lab report without Defendant having an opportunity to cross-examine Dewell violated Defendant's constitutional rights under the confrontation clause of the Sixth Amendment to the United States Constitution. The trial court overruled Defendant's objection, and allowed the lab report to be introduced through a witness other than Dewell. The jury found Defendant guilty on all three counts on 7 April 2011. Defendant appeals.

## I. Indictments

**[1]** In Defendant's first argument, he contends the trial court lacked subject matter jurisdiction over the charge of trafficking in opium by sale because the indictment was fatally defective. We agree.

The State agrees with Defendant's position that the indictment for Count I, trafficking by sale, was fatally defective because it failed to name the person to whom Defendant allegedly sold or delivered the controlled substance. *State v. Wall*, 96 N.C. App. 45, 49, 384 S.E.2d

581, 583 (1989) ("[t]he law is settled in this state that an indictment for the sale and/or delivery of a controlled substance must accurately name the person to whom the defendant allegedly sold or delivered, if that person is known") (citations omitted); *see also State v. Bennett*, 280 N.C. 167, 168-69, 185 S.E.2d 147, 149 (1971). The indictment for Count I states that the sale was "to a confidential informant[.]" It is undisputed that the name of the confidential informant was known. The failure to identify specifically the person to whom the opium was sold constitutes a fatal defect in the indictment, which means the trial court never obtained jurisdiction over the matter. *State v. McKoy*, 265 N.C. 380, 381, 144 S.E.2d 46, 47-48 (1965) (a fatally defective indictment is insufficient to confer jurisdiction on the trial court).

Though not argued by Defendant, and not addressed by the State, the indictment for Count II, trafficking by delivery, is similarly defective. The indictment for Count II also fails to name the person to whom Defendant allegedly delivered the opium. This is a fatal defect. *Wall*, 96 N.C. App. at 49, 384 S.E.2d at 583; *Bennett*, 280 N.C. at 168-69, 185 S.E.2d at 149; *see also State v. Wynn*, 204 N.C. App. 371, 696 S.E.2d 203 (2010) (unpublished); *State v. Esquivel*, 184 N.C. App. 379, 646 S.E.2d 443 (2007) (unpublished). Because this is a jurisdictional issue, we address it *ex mero motu. McKoy*, 265 N.C. at 381, 144 S.E.2d at 48.

The indictments for Counts I and II are fatally defective. Therefore, we vacate judgment on both these counts. Count III, trafficking by possession, does not suffer the same defect as it does not involve the transfer of the controlled substance by Defendant to another party.

## II. Lab Report

**[2]** In Defendant's second argument, he contends that the trial court erred in admitting the lab report without the testimony of the chemical analyst who performed the testing. We agree.

Defendant objected to the admission of the lab report on constitutional grounds, citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, ——, 174 L. Ed. 2d 314, 321-322 (2009), arguing that admitting the lab report into evidence without affording Defendant an opportunity to confront the chemical analyst who produced the report violated the Sixth Amendment of the United States Constitution. The State argued that Defendant had waived his right to confront the chemical analyst, and the trial court overruled Defendant's objection.

This Court reviews alleged violations of constitutional rights *de novo*. If a defendant shows that an error has occurred, the State bears the burden of proving the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A–1443(b) (2009). Under the *de novo* standard of review, this Court "considers the matter anew and freely substitutes its own judgment for that of the [trial court]."

*State v. Brewington*, 204 N.C. App. 68, 72, 693 S.E.2d 182, 185-86 (2010) (citations omitted).

It is undisputed that the lab report was introduced into evidence without Defendant having had an opportunity to cross-examine the chemical analyst who performed the actual analysis. The State, citing *Melendez-Diaz*, 557 U.S. at ——, 174 L. Ed. 2d at 321-322, concedes that Defendant had the right to confront the chemical analyst unless Defendant waived the right to confrontation. "The right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections." *Id.* at, ——, 174 L. Ed. 2d at 323 n.3.

North Carolina has adopted a statute governing the admission of chemical analysis reports without the testimony of the analyst:

Whenever matter is submitted to the North Carolina State Crime Laboratory . . . for chemical analysis to determine if the matter is or contains a controlled substance, the report of that analysis certified to upon a form approved by the Attorney General by the person performing the analysis shall be admissible without further authentication and without the testimony of the analyst in all proceedings in the district court and superior court divisions of the General Court of Justice as evidence of the identity, nature, and quantity of the matter analyzed. Provided, however, the provisions of this subsection may be utilized by the State only if:

(1) The State notifies the defendant at least 15 business days before the proceeding at which the report would be used of its intention to introduce the report into evidence under this subsection and provides a copy of the report to the defendant,[1] and

---

[1]. In its 15 February 2010 "Request for Voluntary Discovery" the State stated: "A copy of report(s) will be delivered upon request." We note that the State may not shift the burden to Defendant by requiring Defendant to request a lab report that the State intends to introduce at trial. N.C. Gen. Stat. § 95-90(g)(1) requires the State to not only give notice to Defendant prior to trial of any lab report it intends to introduce at trial without the testimony of the analyst, but to provide the lab report to Defendant as well.

(2) The defendant fails to file a written objection with the court, with a copy to the State, at least five business days before the proceeding that the defendant objects to the introduction of the report into evidence.

If the defendant's attorney of record, or the defendant if that person has no attorney, fails to file a written objection as provided in this subsection, then the report may be admitted into evidence without the testimony of the analyst.

N.C. Gen. Stat. § 90-95(g) (2011).

There is a presumption against the waiver of fundamental constitutional rights. *State v. Vestal*, 278 N.C. 561, 578–79, 180 S.E.2d 755, 767 (1971). "[T]he waiver of all constitutional rights, must be knowing and voluntary[.]" *State v. Gerald*, 304 N.C. 511, 518, 284 S.E.2d 312, 317 (1981) (citation omitted). "The State bears the burden of proving that a defendant made a knowing and intelligent waiver of his rights[.]" *State v. Bunnell*, 340 N.C. 74, 80, 455 S.E.2d 426, 429 (1995) (citation omitted).

The State concedes that there is no definitive record evidence that Defendant ever received a copy of the lab report as required by N.C.G.S. § 90-95(g). The State argues, however, that it was Defendant's burden to prove that the State did not send the lab report, and not the State's burden to demonstrate at trial that Defendant had waived his constitutional right to confront the chemical analyst who prepared the lab report. The State's argument is incorrect. *Bunnell*, 340 N.C. at 80, 455 S.E.2d at 429 ("The State bears the burden of proving that a defendant made a knowing and intelligent waiver of his rights and that his statement was voluntary. *State v. Reid*, 335 N.C. 647, 440 S.E.2d 776 (1994).").

The State also argues: "The [Supplementary Discovery] notice on 3 September 2010 . . . appears to indicate that it was sent after delivery of the SBI lab report to trial counsel." This 3 September 2010 notice is included in the record; however, we do not find that this notice "appears to indicate" that Defendant received a copy of the lab report, much less that it satisfied the State's burden of proving Defendant received the lab report. The 3 September 2010 notice merely includes a handwritten notation at the bottom of the notice that states: "* SBI Lab." This Court has no way of knowing who wrote the notation, when it was written, or what it signifies. The State also made a statement to the trial court that a "[c]opy of the report was delivered to" Defendant's attorney. However, this unsworn statement

by the prosecutor is insufficient to meet the State's burden of proving Defendant waived his constitutional rights because, even assuming the statement is true, there is no indication when the lab report was delivered. In order for the State to comply with N.C.G.S. § 90-95(g), it was required to provide a copy of the lab report to Defendant at least five business days before the start of Defendant's trial. N.C.G.S. § 90-95(g)(2) required Defendant to object at least five business days before the start of the trial, in writing, to the introduction of the lab report without the State calling Dewell. N.C.G.S. § 90-95(g)(1) required the State to provide notice and a copy of the lab report to Defendant before Defendant's obligation to object was triggered. Therefore, if the State did not provide a copy of the lab report to Defendant at least five business days prior to the start of trial, Defendant would not have been able to object in accordance with the statute.

Our review is limited to the record on appeal. *N.C. Concrete Finishers, Inc. v. Farm Bureau Mut. Ins. Co.*, 202 N.C. App. 334, 337-38, 688 S.E.2d 534, 536 (2010). Because the record does not show that the State sent Defendant a copy of the lab report by the required time before trial, we must hold that Defendant did not waive his constitutional right to confront the chemical analyst who prepared the lab report. N.C.G.S. § 90-95(g)(1); *see also State v. Baldwin*, 161 N.C. App. 382, 388-89, 588 S.E.2d 497, 503 (2003); *State v. Carr*, 145 N.C. App. 335, 340-41, 549 S.E.2d 897, 901 (2001) (Following the defendant's objection to introduction of a lab report absent the chemical analyst who produced the report, the trial court conducted an evidentiary hearing, made findings of fact and conclusions of law, and ruled that the defendant had received the report and the notice as required by N.C.G.S. § 90-95(g)(1). Because record evidence supported the trial court's findings that the defendant had received the report and notice within the time frame required by N.C.G.S. § 90-95(g)(1), the defendant's motion to suppress was properly denied).

Because Defendant did not waive his right to confront the chemical analyst who produced the lab report, it was error for the trial court to admit the lab report into evidence. *Brewington*, 204 N.C. App. at 76, 693 S.E.2d at 189. Without the lab report, the State could not prove an element of the crime—that the pills contained a substance prohibited under N.C. Gen. Stat. § 90-95(h)(4). Therefore, the State cannot show that the error was harmless beyond a reasonable doubt, and we must grant Defendant a new trial on the remaining

charge, Count III, trafficking by possession. *Id.* at 83, 693 S.E.2d at 192. Judgment on Count I and Count II is vacated; new trial on Count III.

It is the State's burden to show that it has complied with the requirements of N.C.G.S. § 90-95(g)(1), and that a defendant has waived his constitutional right to confront a witness against him. This burden includes insuring the record on appeal contains sufficient evidence demonstrating full compliance with N.C.G.S. § 90-95(g)(1). Proper appellate review will be greatly facilitated if, as in *Carr*, the trial court conducts a hearing to determine whether waiver pursuant to N.C.G.S. § 90-95(g)(1) has actually occurred.

Vacated in part; new trial in part.

Judges GEER and McCULLOUGH concur.