IN THE SUPREME COURT OF NORTH CAROLINA

No. 291PA12

FILED 24 JANUARY 2014

STATE OF NORTH CAROLINA

v.

GLENN EDWARD WHITTINGTON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 728 S.E.2d 385 (2012), vacating two convictions and ordering a new trial for a third conviction, all of which resulted in judgments entered on 7 April 2011 by Judge Quentin T. Sumner in Superior Court, Nash County. Heard in the Supreme Court on 18 November 2013.

*Roy Cooper, Attorney General, by Kimberly N. Callahan, Assistant Attorney General, for the State-appellant.*

*George B. Currin for defendant-appellee.*

EDMUNDS, Justice.

Before defendant's trial for narcotics offenses, the State notified defendant that, pursuant to North Carolina General Statutes subsection 90-95(g), it intended to introduce a laboratory report of the results of a chemical analysis of the contraband without calling the testing chemist as a witness. At defendant's trial, the report was admitted over defendant's objection. The Court of Appeals reversed defendant's conviction for trafficking in opium by possession, holding that the State

failed to establish that defendant waived his constitutional right to confront the witnesses against him because the record did not demonstrate that the State had provided a pretrial copy of the lab report to defendant. We conclude that defendant neither raised nor preserved this issue at trial. Accordingly, we reverse the Court of Appeals on that issue.

Defendant Glenn Edward Whittington (defendant) was involved in a drug sting on 2 July 2008. Joey Sullivan (Sullivan), a cooperating witness, identified defendant to the Nash County Sheriff's Office as his supplier of illicit prescription medicine. In response, Sergeant Phillip Lewis (Lewis), an investigator in the narcotics division of the sheriff's office, set up a controlled transaction. Lewis wired Sullivan for video and sound, then provided him with cash and gave him instructions for the purchase. Sullivan drove to defendant's house, bought "16 green colored pills" from defendant, and returned to Lewis with the pills.

On 11 May 2009, a three-count indictment was returned charging defendant with trafficking in controlled substances by sale (Count I), delivery (Count II), and possession (Count III) of between four and fourteen grams of opium, in violation of N.C.G.S. § 90-95(h)(4). On 16 November 2009, the State delivered the pills to the State Bureau of Investigation laboratory for chemical analysis. The SBI lab's report, issued on 8 December 2009, identified the "sixteen green circular tablets" as "Oxycodone - Schedule II Opium Derivative" with a weight of "4.3 grams."

Prior to trial, the State notified defendant that it was invoking North Carolina's notice and demand statute, N.C.G.S. § 90-95(g). The statute allows the State to inform a defendant of its intent to enter into evidence the results of chemical analysis identifying whether submitted "matter is or contains a controlled substance" without testimony from the analyst who performed the test, so long as the notice is timely and the defendant is provided a copy of the report. N.C.G.S. § 90-95(g) (2012). The statute further provides a defendant the opportunity to object in writing before trial to introduction of the report without the analyst's testimony. *Id.* In a document dated 15 February 2010 titled "Notice of Intention to Introduce Evidence at Trial" that was served on defendant and filed with the clerk of court, the State advised defendant that it intended to introduce as evidence pursuant to N.C.G.S. § 90-95(g), "any and all reports prepared by the N.C. State Bureau of Investigation concerning the analysis of substances seized in the above-captioned case. A copy of report(s) will be delivered upon request." The record does not indicate that, before trial, defendant either requested a copy of the report or raised any objection.

Defendant's trial began on 6 April 2011. The State called Jason Bryant (Bryant), an investigator with the Nash County Sheriff's Office, who testified that he delivered the pills to the SBI lab for chemical analysis, then later retrieved the pills from that lab, along with "a lab sheet of their analysis." When the prosecutor asked Bryant "what the lab report states," defendant objected, citing two grounds.

The first grounds challenged the sufficiency of the foundation laid by the State as to the chain of custody. The trial court sustained this portion of the objection and that issue is not before us. Defendant then characterized the second part of his objection as constitutional:

> [DEFENSE COUNSEL]: . . . [T]he second part of my foundation is a constitutional basis, Your Honor. That this officer is not allowed -- not a physician, he's not allowed to testify about the examination of a substance that was done by another officer who has not been on the witness stand, who has not testified and cannot testify about the results of any examination that another person did based upon purely and simply from reading of the report into evidence.

In response to defendant's constitutional objection, the prosecutor informed the court that the State had notified defendant of its intent to introduce the results of the analysis through the lab report. The court expressed its understanding that, once given such notice, defendant had the burden of raising a Confrontation Clause objection in sufficient time to allow the State to subpoena the analyst for trial:

> [THE STATE]: . . . As far as Investigator Bryant reading the reports of the lab, the State did file a notice of our intent to use the lab [report] to introduce those results. Investigator Bryant is not asked to -- to analyze the pills, we're only asking him to read what the State is proposing to admit into evidence.
>
> THE COURT: I believe once you gave [defendant] notice of what you're intending to do [it] is incumbent upon him at that time to indicate the objection --
>
> [THE STATE]: Yes, sir.
>
> THE COURT: -- and you would subpoena the SBI

agent here.

[THE STATE]: Yes, sir. Yes, sir.

THE COURT: All right.

Defendant immediately disagreed with the court's interpretation, contending that "my position is that was the law at one time," then added that "the *Melendez-Diaz* case that was decided [by] the United States Supreme Court firmly established the point that I'm trying to make to the Court at this point in this case," citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). Although the court asked defendant if he had anything further, defendant provided no additional analysis or argument as the basis for his constitutional objection. The trial court overruled defendant's constitutional objection and allowed Bryant to testify that the SBI lab report identified the "sixteen green circular tablets" as "Oxycodone, Schedule II opium derivative, weight of tablets 4.3 grams."

Later that same morning, after the jury had been excused for its lunch break, the State requested that its "Notice of Intention to Introduce Evidence at Trial," which it had filed and delivered to defense counsel before trial, be entered into the court file. Defense counsel responded that he had no objection to the State's request, but added that "I still rely upon my continuing objections." The trial court admitted the document. On 7 April 2011, the jury found defendant guilty as charged.

Defendant appealed his convictions to the Court of Appeals, challenging, *inter alia*, the introduction of the lab report into evidence over his objection. That court vacated defendant's convictions on Counts I and II because of a fatal defect in the indictments, a result the State does not contest, and ordered a new trial as to Count III, finding that defendant's constitutional objection should have been sustained and that admission of the lab report constituted prejudicial error. *State v. Whittington*, ___ N.C. App. ___, ___, 728 S.E.2d 385, 388-90 (2012).

Noting the presumption against a waiver of constitutional rights, the Court of Appeals observed that " '[t]he State bears the burden of proving that a defendant made a knowing and intelligent waiver of his rights[.]' " *Id.* at ___, 728 S.E.2d at 389 (second alteration in original) (quoting *State v. Bunnell*, 340 N.C. 74, 80, 455 S.E.2d 426, 429 (1995) (citation omitted)). The court reviewed N.C.G.S. § 90-95(g)(1), which, when invoked by the State, in part requires the State to provide a copy of the lab report to a defendant prior to trial, *id.* at ___, 728 S.E.2d at 388-89, then reasoned that

> [i]t is the State's burden to show that it has complied with the requirements of N.C.G.S. § 90-95(g)(1), and that a defendant has waived his constitutional right to confront a witness against him. This burden includes insuring the record on appeal contains sufficient evidence demonstrating full compliance with N.C.G.S. § 90-95(g)(1).

*Id.* at ___, 728 S.E.2d at 390.

Observing that "[t]he State concedes that there is no definitive record evidence that [d]efendant ever received a copy of the lab report as required by N.C.G.S. § 90-95(g)," *id.* at 728 S.E.2d at 389, the Court of Appeals determined that "[b]ecause the record does not show that the State sent [d]efendant a copy of the lab report by the required time before trial, . . . [d]efendant did not waive his constitutional right to confront the chemical analyst who prepared the lab report." *Id.* at ___, 728 S.E.2d at 389. Concluding that "it was error for the trial court to admit the lab report into evidence" and that the error was not harmless beyond a reasonable doubt, the Court of Appeals vacated defendant's convictions in part and granted defendant a new trial in part. *Id.* at ___, 728 S.E.2d at 390. We allowed the State's Petition for Discretionary Review.

We review constitutional issues de novo. *State v. Ortiz-Zape*, ___ N.C. ___, ___, 743 S.E.2d 156, 162 (2013). We first consider the argument that defendant made at trial in support of his constitutional objection. This argument, quoted virtually in its entirety above, is based solely upon defendant's view that subsection 90-95(g) is no longer good law as a result of the Supreme Court's 2009 decision in *Melendez-Diaz*. Subsection 90-95(g), originally included in the statute in 1973, read as follows at the time of defendant's trial:

> (g) Whenever matter is submitted to the North Carolina State Crime Laboratory, the Charlotte, North Carolina, Police Department Laboratory or to the Toxicology Laboratory, Reynolds Health Center, Winston-Salem for chemical analysis to determine if the matter is

or contains a controlled substance, the report of that analysis certified to upon a form approved by the Attorney General by the person performing the analysis shall be admissible without further authentication and without the testimony of the analyst in all proceedings in the district court and superior court divisions of the General Court of Justice as evidence of the identity, nature, and quantity of the matter analyzed. Provided, however, the provisions of this subsection may be utilized by the State only if:

(1) The State notifies the defendant at least 15 business days before the proceeding at which the report would be used of its intention to introduce the report into evidence under this subsection and provides a copy of the report to the defendant, and

(2) The defendant fails to file a written objection with the court, with a copy to the State, at least five business days before the proceeding that the defendant objects to the introduction of the report into evidence.

If the defendant's attorney of record, or the defendant if that person has no attorney, fails to file a written objection as provided in this subsection, then the report may[1] be admitted into evidence without the testimony of the analyst. Upon filing a timely objection, the admissibility of the report shall be determined and governed by the appropriate rules of evidence.

Nothing in this subsection precludes the right of any party to call any witness or to introduce any evidence supporting or contradicting the evidence contained in the report.

N.C.G.S. § 90-95(g).

---

[1] In 2013, after defendant's trial, the General Assembly amended subsection 90-95(g) by changing the term "may" to "shall." Act of June 13, 2013, ch. 171, sec. 7, 2013, 2 N.C. Adv. Legis. Serv. 421, 423 (LexisNexis) (captioned "An Act to Amend the Laws Regarding Disposition of Blood Evidence, Admissibility of Reports after Notice and Demand, and Expunction of DNA Samples Taken Upon Arrest.").

Thus, subsection 90-95(g) is a typical "notice and demand statute," as described by the Supreme Court of the United States:

> [N]otice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial.

*Melendez-Diaz*, 557 U.S. at 326, 129 S. Ct. at 2541, 174 L. Ed. 2d at 331. In response to arguments that such statutes shift to a defendant the burden of giving notice of his or her intent to confront the analyst, the Supreme Court found that "these statutes shift no burden whatever." *Id.* at 327, 129 S. Ct. at 2541, 174 L. Ed. 2d at 331. Instead, the Court explained that a

> defendant *always* has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the *time* within which he must do so. States are free to adopt procedural rules governing objections. It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses. There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial.

*Id.* (citations omitted). Accordingly, we conclude that *Melendez-Diaz* had no impact on the continuing vitality of subsection 90-95(g). When the State satisfies the requirements of subdivision 90-95(g)(1) and the defendant fails to file a timely written objection, a valid waiver of the defendant's constitutional right to confront the analyst occurs.

We next consider whether defendant preserved the notice and waiver issue that the Court of Appeals found dispositive. Although the statute requires that the State provide a copy of the lab report to a defendant "before the proceeding at which the report would be used," N.C.G.S. § 90-95(g)(1), the State's notice stated only that "[a] copy of report(s) will be delivered upon request." As a result, the State's notice was deficient in that, while it establishes that defendant was timely advised of the State's intent, it leaves the record devoid of proof that defendant was also provided a copy of the lab report prior to trial.

Nevertheless, defendant never advised the trial court that the basis of his constitutional objection was either the State's notice or the State's failure to provide a pretrial copy of the lab report. Instead, the transcript indicates that the constitutional objection, first made orally at trial, was based entirely on defendant's mistaken belief that the procedure set out in subsection 90-95(g) had been invalidated by the Supreme Court's opinion in *Melendez-Diaz*. Although the trial court gave defendant ample opportunity to raise questions regarding the State's compliance with subsection 90-95(g) or any other basis for his objection to admission of the lab report, defendant gave none. Thus, while defendant adequately advised the trial court that the basis for his objection was the Confrontation Clause, the "specific grounds" that North Carolina Rule of Appellate Procedure 10(a)(1) required defendant set out for the trial court did not include any complaint about pretrial delivery of the lab report. N.C. R. App. P. 10(a)(1). Only in defendant's

-10-

brief to the Court of Appeals did he "swap horses" to raise for the first time the issue of the adequacy of the State's notice to him. *See Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount . . . ."). Consequently, the objection that defendant raised in the trial court was properly overruled because subsection 90-95(g) is still good law, while no objection relating to the State's compliance *vel non* with subsection 90-95(g) was ever brought to the trial court's attention. Because defendant did not raise or preserve at trial any constitutional theory relating to the State's failure to comply with the provisions of subdivision 90-95(g)(1), he waived appellate review based upon inadequate notice. N.C. R. App. P. 10(a)(1); *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005) ("[C]onstitutional error will not be considered for the first time on appeal); *see also State v. King*, 343 N.C. 29, 45-48, 468 S.E.2d 232, 242-44 (1996) (stating that when the defendant raised at trial a constitutional objection relating to the rights of the testifying witness, he failed to preserve a constitutional issue based on his own rights); *State v Benson*, 323 N.C. 318-19, 321, 372 S.E.2d 517, 519 (1988) (concluding that when the defendant moved to suppress his confession on several grounds and the trial judge denied the motion solely "upon the voluntariness theory," the defendant could not argue for the first time on appeal the new basis that his arrest had been unlawful); *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d

535, 539 (1982) ("The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions.").

Because defendant failed properly to raise or preserve the issue regarding the State's compliance with subsection 90-95(g), we reverse that portion of the opinion of the Court of Appeals that reversed defendant's conviction on Count III of the indictment. The remaining issues addressed by the Court of Appeals are not before this Court and its decision as to these matters remains undisturbed. This case is remanded to the Court of Appeals for consideration of the remaining assignments of error.

REVERSED IN PART AND REMANDED.

No. 291PA12 – State v. Whittington

Justice HUDSON dissenting.

Because in my view the majority here improperly shifts the burden of proving compliance with N.C.G.S. § 90-95(g) from the State to defendant, I respectfully dissent.

It is true that under *Melendez-Diaz v. Massachusetts* and other Confrontation Clause precedent, "[t]he defendant *always* has the burden of raising his Confrontation Clause objection." 557 U.S. 305, 327, 129 S. Ct. 2527, 2541 (2009). In the context of a trial on drug offenses, this means that if the State attempts to

introduce a lab report without calling the testing analyst to the stand, the defendant must object on constitutional Confrontation Clause grounds to protect his right to confront witnesses against him. Here the practical result of the majority opinion is that a defendant who wishes to challenge the State's compliance with our notice and demand statute must also object specifically on those grounds. This is not necessary under the cases as I read them. When a defendant raises a Confrontation Clause objection—whether because the State is attempting to have a lay witness read the lab report into evidence or that the State has called to the stand a substitute analyst who has no truly independent opinion to offer—he has met his constitutional burden. The burden is then on the State to prove waiver, as subsection 90-95(g) can provide. To prove waiver the State must show that it (1) "notifie[d] the defendant at least 15 business days before the proceeding at which the report would be used of its intention to introduce the report into evidence" and (2) "provide[d] a copy of the report to the defendant." N.C.G.S. § 90-95(g)(1) (2013). This statute appears to require the State's showing to include documentation, not mere assertions. Therefore, when the State plans on introducing a lab report into evidence without the testimony of the testing analyst and the State believes it has complied with the requirements of subsection 90-95(g), the State should be prepared to submit that documentation at trial to prove compliance in case of an objection by the defendant. If the defendant further challenges that proof (arguing, for example, that he did not receive either or both of the documents), then the trial court is

properly situated to review the evidence and rule on the matter. Once the State has shown compliance with the requirements placed on it under subdivision 90-95(g)(1), the burden shifts to the defendant to prove that he "file[d] a written objection with the court, with a copy to the State, at least five business days before the proceeding." *Id.* § 90-95(g)(2) (2013). However, the statute appears to shift that burden to a defendant only if the State has proved its compliance, and accordingly, without the State's showing of compliance with the statutory requirements, the defendant need not object.

The State argued, and the majority has agreed, that without a specific objection on subsection 90-95(g) grounds, the State would not be aware that it might later be required to prove its compliance with the statute; this argument serves as the basis for the majority's claim that defendant is attempting to "swap horses between courts in order to get a better mount." *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). In my opinion, this argument fails because an objection on Confrontation Clause grounds necessarily includes failure to comply with N.C.G.S. § 90-95(g). If at trial a defendant objects on any Confrontation Clause basis, the easiest response a prosecutor can make is to show waiver—because if a defendant has waived his right to object, he has already lost on that issue. In that sense, the constitutional Confrontation Clause right is inextricably bound with the notice and demand statute allowing waiver: the constitutional objection can be countered by showing waiver, and conversely, any procedural objection to compliance with the

statute could undermine the State's claim that a defendant waived his constitutional Confrontation Clause rights. Moreover, here it is clear that the prosecutor was well aware that the State's compliance with subsection 90-95(g) would be at issue on appeal, despite no specific objection from defendant on those grounds. This conclusion is evidenced by the colloquy in which the State moved the Notice into evidence: "[The State]: . . . I anticipate by the way things are going that there could be a possible appeal and I just want the record on appeal to reflect that [the Notice] was part of the record." Any such Confrontation Clause objection should instantly alert the State that its compliance with the notice and demand statute is being challenged, and the State then has the burden of proving that it complied with the statutory requirements.

The majority also highlights defense counsel's alleged contention that subsection 90-95(g) is no longer good law in light of *Melendez-Diaz* and his failure to challenge the State's assertion that it complied with the statutory requirements. I agree with the majority that "*Melendez-Diaz* had no impact on the continuing vitality of subsection 90-95(g)." Ultimately, though, while the transcript here does appear to show some confusion on the issues, it does not matter what defense counsel said or did not say. Defendant met his initial burden by objecting to admission of the lab report in violation of his Confrontation Clause rights. The burden then shifted to the State to prove compliance with our notice and demand statute, which it failed to do. Any further commentary from defense counsel was

unnecessary. Best practices would dictate that a defendant alert the trial court if the State fails to meet its burden, but such an objection is not required. Protection of constitutional Confrontation Clause rights requires a defendant to object initially. I conclude that here, Defendant met his burden; the State did not meet its own burden to show waiver.

Here, while the State submitted documentary evidence to show compliance with the notice requirement, the State did not submit any evidence to show that it actually sent a copy of the lab report to defendant.[2] The State's bald assertion that "[c]opy of the report was delivered to [defense counsel]" is insufficient. Therefore, I conclude that the State failed to meet its burden under subsection 90-95(g) to prove that defendant waived his constitutional Confrontation Clause rights and the trial court erred in overruling his objection to admission of the lab report into evidence. Defendant did not need to further object or challenge any evidence presented by the State because the State failed to meet its initial burden.

For the reasons stated above, I respectfully dissent.

Justice BEASLEY joins in this dissenting opinion.

---

[2] As noted by the majority, while the State's "Notice of Intention to Introduce Evidence at Trial" form is sufficient to give notice, the form is also troubling in some aspects in that it may be inconsistent with the statute. Specifically, the form states that "[a] copy of report(s) will be delivered upon request." As is made clear by N.C.G.S. § 90-95(g)(1), the State *must* provide a copy of the lab report, regardless of whether it is requested.