IN THE SUPREME COURT OF NORTH CAROLINA

No. 329PA11

FILED 27 JUNE 2013

STATE OF NORTH CAROLINA

v.

MARIO EDUARDO ORTIZ-ZAPE


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 714 S.E.2d 275 (2011), reversing in part and vacating a judgment entered on 19 February 2010 by Judge Jerry Cash Martin in Superior Court, Mecklenburg County. Heard in the Supreme Court on 13 February 2013.

Roy Cooper, Attorney General, by Amy Kunstling Irene and Daniel P. O'Brien, Assistant Attorneys General, for the State-appellant.

Staples S. Hughes, Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellee.

MARTIN, Justice.

An expert in forensic science testified as to her opinion that a substance was cocaine, based upon her independent analysis of testing performed by another analyst in her laboratory. The Court of Appeals held that this testimony violated defendant's Sixth Amendment right to confront witnesses against him. We disagree and reverse.

On the night of 16 May 2007, Officer Craig Vollman of the Charlotte Mecklenburg Police Department (CMPD) was on patrol duty in the University City area. Around 10:30 p.m. a car driven by defendant pulled into an Exxon gas station. Officer Vollman observed that the car's thirty-day temporary tag was "ratty and old" and the "dates looked to be tampered with." When defendant parked in front of the gas station store, Officer Vollman pulled his patrol car behind defendant's vehicle and approached him to speak about the thirty-day tag. While defendant looked through the glove compartment for the car's registration paperwork, Officer Vollman shined his flashlight around the car to check for weapons. Upon shining the light in the storage compartment of the open driver's door, he saw what he believed to be cocaine packaged in a plastic bag.

Officer Vollman asked defendant what was in the bag. According to Officer Vollman's testimony, defendant stated, "It's mine," and responded affirmatively that it was cocaine but that "it was for personal use." Officer Vollman placed defendant under arrest. He then found "eight separate plastic sandwich baggies" in the same door compartment as the cocaine. He also searched defendant and found $304 in cash in his pocket. After defendant had been transported to the Mecklenburg County jail, another officer weighed the confiscated substance and recorded the result as 4.5 grams. The substance was subsequently sent to the department's crime lab for analysis. Defendant was indicted for possession with intent to sell or deliver cocaine.

At trial the State sought to introduce Tracey Ray of the CMPD crime lab as an expert in forensic chemistry. During voir dire proceedings on the matter, defendant sought to exclude admission of a lab report created by a non-testifying analyst and any testimony by any lab analyst who did not perform the tests or write the lab report. Defendant based this motion primarily on Sixth Amendment grounds, arguing that admission of this evidence would violate his right to confront witnesses against him. The trial court ruled that Ray could testify about the practices and procedures of the CMPD crime lab, her review of the testing in this case, and her independent opinion concerning the testing. But the trial court excluded admission of the non-testifying analyst's lab report under Rule of Evidence 403.

Before the jury, the State introduced Ray as an expert in forensic chemistry. Ray testified she had been a forensic chemist for approximately eleven years and had analyzed substances more than one thousand times for trial purposes. Ray explained the standard procedures for receipt and storage of substances sent to the CMPD crime lab. She testified that, based on the initials and control number on the plastic bag containing the white substance—which had been admitted into evidence as Item Number 9—the substance had been sent to the CMPD crime lab. She stated the initials "JPM" on the item indicated to her that a chemist named Jennifer Mills, who formerly had worked at the crime lab, "was in receipt of this evidence and that she sealed this particular piece of evidence."

Ray then explained, based on her knowledge of the lab's standard procedures, what would happen to an item such as Item Number 9 when it arrived for testing: First, the analyst would ensure that the control numbers on the property report and the actual property matched. Then, the analyst would weigh the substance and perform what is called a "presumptive test" to give an indication of what the substance might be. For substances suspected to be cocaine, the presumptive test is a cobalt thiocyanate test. If the substance turns blue, this indicates that cocaine may be present. Next, the analyst would perform a "confirmatory test" to determine the identity of the substance, using a gas chromatograph mass spectrometer (GCMS) or an infrared spectrometer (FTIR). The instruments that perform these tests record the results and data within the machine, allowing for review later in time. According to Ray's testimony, it is not possible to alter this reviewable data. After completing the testing, the laboratory analyst prepares a report and puts it in the item's case file, along with all notes and data created during the testing. As part of the lab's standard operating procedure, an administrative and a technical review are performed on nearly every case file by another analyst in the lab. As part of this review, the second analyst examines all the data in the case file to ensure he or she would have come to the same conclusion as to the identity of the substance.

Ray also explained that the lab has standard procedures for ensuring that the testing instruments are in working order. CMPD lab procedure dictates that all

instruments be tested weekly and monthly, with the results recorded in each instrument's maintenance log. Ray testified that she had reviewed the maintenance logs and determined that all the instruments appeared to have been in working order when Item Number 9 was tested.

Ray testified that she conducted a "peer review" on the chemical analysis of Item Number 9 for defendant's trial. She reviewed all the lab notes and data from the testing instrument. She stated that the color test and the GCMS test performed on the substance are tests that "experts in the field of forensic chemistry would rely upon . . . in performing [sic] the opinion as to the identity of a chemical substance." The prosecutor asked Ray whether, based on her training and experience and her review of the case file here, she had formed an independent expert opinion about the substance at issue in this case. Defense counsel objected and was overruled. Ray testified, "My conclusion was that the substance was cocaine."

On cross-examination defense counsel further clarified that "any opinions [Ray] g[a]ve in court about the nature of this substance [were] based entirely on testing done by someone else" and that Ray was not present when the tests were performed. Defense counsel also further clarified that Ray's testimony assumed the testing analyst, Mills, had followed standard lab procedures in her testing of Item Number 9.

The jury convicted defendant of possession of cocaine. The Court of Appeals reversed the trial court, relying on *State v. Williams*, 208 N.C. App. 422, 702 S.E.2d

233 (2010). *State v. Ortiz-Zape*, ___ N.C. App. ___, 714 S.E.2d 275, 2011 WL 2848792 (2011) (unpublished). The court observed Ray "did not conduct any tests on the substance, nor was she present when [the testing chemist] did," and concluded that Ray "could not have provided her own admissible analysis of the relevant underlying substance." *Ortiz-Zape*, 2011 WL 2848792 at *2 (alteration in original) (citations and quotation marks omitted). The court held "it was error for Ms. Ray to testify as to [the testing chemist's] findings." *Id.* (citation omitted). We allowed the State's petition for discretionary review.

"Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber,* 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations omitted). Defendant argues that, because Ray did not test the substance at issue herself or personally observe any testing, she could form no independent opinion regarding the identity of the substance, and thus admission of her opinion identifying the substance as cocaine violated defendant's rights under the Confrontation Clause. The State argues that there was no Confrontation Clause violation because the expert testified to her own opinion about the identity of the substance. We find no error in the trial court's decision to allow the expert to state her opinion, and we reverse the decision of the Court of Appeals.

To resolve the issue raised in this case, we must examine the North Carolina Rules of Evidence in light of recent Confrontation Clause jurisprudence. The North Carolina Rules of Evidence allow for expert testimony "in the form of an opinion, or

otherwise," if the expert's "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," provided: "(1) The testimony is based upon sufficient facts or data[;] (2) The testimony is the product of reliable principles and methods [and] (3) The witness has applied the principles and methods reliably to the facts of the case." N.C. R. Evid. 702(a). The expert may base the opinion on facts or data "made known to him at or before the hearing." *Id.* R. 703. "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." *Id.*

While the North Carolina Rules of Evidence permit an expert to present an opinion based on substantively inadmissible information, this evidentiary rule must comport with constitutional requirements. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The jurisprudence interpreting this clause has undergone significant changes in recent years.

In 2004 the Supreme Court of the United States concluded that testimonial statements of a witness who is absent from trial may be admitted only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004). *Crawford* overturned the former rule from *Ohio v. Roberts*, which

"condition[ed] the admissibility of all hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.' " *Id.* at 60, 124 S. Ct. at 1369 (quoting *Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980)). While application of the *Crawford* rule depends on which statements qualify as testimonial hearsay, the Court declined to "spell out a comprehensive definition of 'testimonial.' " *Id.* at 68, 124 S. Ct. at 1374. The Court noted, however, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court further noted, "The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 60 n.9, 124 S. Ct. at 1369 n.9.

Since 2004 the Court has considered the application of *Crawford* in several cases involving forensic reports. In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527 (2009), the trial court admitted into evidence three " 'certificates of analysis' " "showing the results of the forensic analysis"—that the substance in the seized bags was cocaine of a certain weight. *Id.* at 308, 129 S. Ct. at 2530-31. These certificates were sworn to before a notary public and admitted pursuant to state law as " 'prima facie evidence of the composition, quality, and the net weight of the narcotic.' " *Id.* at 308-09, 129 S. Ct. at 2531 (quoting Mass. Gen. Laws ch. 111, § 13). The defendant was not given the opportunity to cross-examine the analysts who performed the tests and certified the results. *Id.* at 309, 129 S. Ct. at 2531.

Citing *Crawford*, the Court concluded that "the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* that [the defendant] had a prior opportunity to cross-examine them, [the defendant] was entitled to 'be confronted with' the analysts at trial." *Id.* at 311, 129 S. Ct. at 2532 (quoting *Crawford*, 541 U.S. at 54, 124 S. Ct. at 1365).

In 2011 the Court considered "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Bullcoming v. New Mexico*, ___ U.S. ___, ___, 131 S. Ct. 2705, 2710 (2011). At trial the State called an analyst who had not done the testing to introduce a lab report certifying the defendant's blood-alcohol concentration. *Id.* at ___, 131 S. Ct. at 2710. The Court held that "surrogate testimony of that order does not meet the constitutional requirement." *Id.* at ___, 131 S. Ct. at 2710.

In her concurring opinion in *Bullcoming*, Justice Sotomayor highlighted some of the scenarios *not* presented in that case: (1) The State presents an alternate purpose for the report; (2) The in-court witness "is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue"; (3) "[A]n expert witness was asked for his independent opinion about

underlying testimonial reports that were not themselves admitted into evidence"; and (4) The State "introduced only machine-generated results, such as a printout from a gas chromatograph." *Id.* at ___, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part).

Most recently, the Supreme Court considered *Crawford*'s application in *Williams v. Illinois*, ___ U.S. ___, ___, 132 S. Ct. 2221, 2227 (2012). At trial an expert testified that "a DNA profile produced by an outside laboratory, Cellmark, matched a profile produced by the state police lab using a sample of [the defendant's] blood." *Id.* at ___, 132 S. Ct. at 2227 (Alito, J., Roberts, C.J., Kennedy, & Breyer, JJ., plurality). The expert did not perform or witness the testing that produced the DNA profile. *Id.* at ___, 132 S. Ct. at 2245 (Breyer, J., concurring). The Court's "fractured decision," *id.* at ___, 132 S. Ct. at 2265 (Kagan, Scalia, Ginsburg, & Sotomayor, JJ., dissenting), produced a plurality opinion of four Justices, a dissenting opinion of four Justices, and two concurring opinions (with one Justice concurring in the plurality's judgment only). *See Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (citation and internal quotation marks omitted)).

The four-Justice plurality concluded that (1) as the basis of the expert's opinion, the statement was not admitted for the truth of the matter asserted, and (2) the Cellmark report "plainly was not prepared for the primary purpose of accusing a targeted individual." *Id.* at ___, ___, 132 S. Ct. at 2240, 2243 (plurality). In other words, the plurality determined that the statement was neither hearsay nor testimonial and therefore did not violate the Confrontation Clause. Justice Thomas concurred in the result reached by the plurality because "Cellmark's statements lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause." *Id.* at ___, 132 S. Ct. at 2255 (Thomas, J., concurring in the judgment) (citation and internal quotation marks omitted). But he would have held the expert presented an out-of-court statement for the truth of the matter. *Id.* at ___, 132 S. Ct. at 2256. The four-Justice dissent agreed with Justice Thomas on that point, arguing that the expert's statement constituted an out-of-court statement for the truth of the matter asserted. *Id.* at ___, 132 S. Ct. at 2268-72 (dissenting opinion). But the dissent disagreed with the plurality's and Justice Thomas's separate conclusions that the statements were not testimonial. As testimonial hearsay, the dissent argued, the statement was subject to the demands of the Confrontation Clause. *Id.* at ___, 132 S. Ct. at 2272-77. Justice Kagan closed the dissent by predicting that the Court's fractured decision would cause "significant confusion" for lawyers and judges. *Id.* at ___, 132 S. Ct. at 2277.

Despite the lack of definitive guidance on the issue before us, a close examination of *Williams v. Illinois* seems to indicate that a qualified expert may provide an independent opinion based on otherwise inadmissible out-of-court statements in certain contexts. Both the plurality and dissent agree that an expert's opinion may ultimately be admissible, but they disagreed as to the foundational information required. *See id.* at ___, ___, 132 S. Ct. at 2228, 2236 (plurality) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true."); *id.* at ___, 132 S. Ct. at 2270 (dissenting opinion) ("[The witness] could have added that *if* the Cellmark report resulted from scientifically sound testing of [the victim's] vaginal swab, *then* it would link Williams to the assault."). We note the dissent's concern in *Williams* was the use of out-of-court statements by a declarant whom the criminal defendant had no opportunity to cross-examine. *Id.* at ___, ___, 132 S. Ct. at 2265, 2268. But when an expert states her own opinion, without merely repeating out-of-court statements, the expert is the person whom the defendant has the right to cross-examine.

We believe our prior holding on this issue is consistent with this conclusion. In 2001 we stated that when an expert gives an opinion, "[i]t is the expert opinion itself, not its underlying factual basis, that constitutes substantive evidence." *State v. Fair*, 354 N.C. 131, 162, 557 S.E.2d 500, 522 (2001) (citation omitted), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332 (2002). Therefore, when an expert gives an

opinion, the expert is the witness whom the defendant has the right to confront. In such cases, the Confrontation Clause is satisfied if the defendant has the opportunity " 'to fully cross-examine the expert witness who testifies against him,' " allowing the factfinder " 'to understand the basis for the expert's opinion and to determine whether that opinion should be found credible.' " *Id.* (citations omitted). Accordingly, admission of an expert's independent opinion based on otherwise inadmissible facts or data "of a type reasonably relied upon by experts in the particular field" does not violate the Confrontation Clause so long as the defendant has the opportunity to cross-examine the expert.[1] N.C. R. Evid. 703; *see Fair*, 354 N.C. at 162-63, 557 S.E.2d at 522; *see also United States v. Turner*, 709 F.3d 1187, 1190 (7th Cir. 2013). We emphasize that the expert must present an independent opinion obtained through his or her own analysis and not merely "surrogate testimony" parroting otherwise inadmissible statements. *See Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2710 (majority).

A related issue is whether an expert who bases an opinion on otherwise inadmissible facts and data may, consistent with the Confrontation Clause, disclose

---

[1] The dissenting opinion would adopt the four-part analysis set out in *State v. Brewington*, 204 N.C. App. 68, 78, 693 S.E.2d 182, 189 (2010). We decline to adopt this test, as it is not generally applicable to cases such as the one before us. For example, under the dissent's proposed test, the first step is to "determine whether the underlying lab report is testimonial." But the Confrontation Clause is concerned with *testimonial hearsay*. *See, e.g., Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. If the challenged testimony is not hearsay—in other words, if the witness does not repeat out-of-court statements—then it is not necessary to determine whether a lab report is testimonial.

those facts and data to the factfinder. Machine-generated raw data, typically produced in testing of illegal drugs, present a unique subgroup of this type of information. Justice Sotomayor has noted there is a difference between a lab report certifying a defendant's blood-alcohol level and "machine-generated results, such as a printout from a gas chromatograph." *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part). The former is the testimonial statement of a person, *see id.* at ___, 131 S. Ct. at 2717 (majority), and the latter is the product of a machine. A number of courts have concluded that machine-generated raw data are not testimonial hearsay under the Confrontation Clause. One court wrote: "Nor is a machine a 'witness against' anyone. If the readings are 'statements' by a 'witness against' the defendants, then the machine must be the declarant. Yet how could one cross-examine [a machine]?" *United States v. Moon*, 512 F.3d 359, 362 (7th Cir.), *cert. denied*, 555 U.S. 812, 129 S. Ct. 40 (2008); *see also United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007), *cert. denied*, 557 U.S. 934, 129 S. Ct. 2856 (2009); David H. Kaye et al., *The New Wigmore: A Treatise on Evidence* § 4.12.5 (Richard D. Friedman ed., Supp. 2013) [hereinafter *Wigmore on Evidence*]. Because machine-generated raw data, "if truly machine-generated," are not statements by a person, they are "neither hearsay nor testimonial." *Wigmore on Evidence* § 4.12.5, at 44; *see also Williams*, ___ U.S. at ___, 132 S. Ct. at 2259 (Thomas, J., concurring in the judgment) ("[T]he Confrontation Clause regulates only the use of statements bearing indicia of solemnity." (citation and internal

quotation marks omitted)). We note that "representations[ ] relating to past events and human actions not revealed in raw, machine-produced data" may not be admitted through "surrogate testimony." *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2714. Accordingly, consistent with the Confrontation Clause, if "of a type reasonably relied upon by experts in the particular field," N.C. R. Evid. 703, raw data generated by a machine may be admitted for the purpose of showing the basis of an expert's opinion.

We turn now to the instant case. Before reaching the dispositive legal issue, we must address matters of procedure. Defendant alleges that several portions of Ray's testimony were erroneously admitted, yet defendant objected only once during the course of Ray's testimony. "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). While unpreserved evidentiary error in criminal cases may be reviewed for plain error, "the defendant must 'specifically and distinctly' contend that the alleged error constitutes plain error." *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (quoting N.C. R. App. P. 10(a)(4)). Defendant did not allege plain error; therefore, we review only the single alleged error to which he objected at trial and thereby preserved for appellate review: Agent Ray's statement that in her expert

opinion the substance was cocaine.[2]  We review this alleged constitutional error de novo.

During voir dire defense counsel moved to exclude admission of the lab report, the lab tests, and any testimony by any lab analyst who did not personally perform the tests or write the reports, based on Confrontation Clause grounds.  The court ruled that Ray could testify about her background, experience, education, and training; the practices and procedures of the CMPD crime lab; and her review of the testing done and her independent opinion.  The court also ruled that the State could not admit the non-testifying analyst's report into evidence because of considerations under Rule of Evidence 403.  Thus, unlike in *Melendez-Diaz* and *Bullcoming*, the reports produced by the non-testifying analyst were not admitted into evidence.

Before the jury Ray was certified as an expert in forensic chemistry and testified regarding the CMPD crime lab's standard procedures and her review of the tests associated with the substance at issue.  The prosecutor then asked:

---

[2] The dissenting opinion argues Agent Ray "*testified to some of* [the] *contents*" of the report written by the non-testifying analyst.  As an example, the dissent writes: "[The analyst] was later asked, '[C]an you tell us what [the original analyst's] result appears to have been?'  She answered, '[O]n the color test, it has a positive sign with a circle around it and then says blue underneath that.' "  The dissenting opinion fails to note, however, that this testimony was elicited by defendant's attorney on cross-examination—not by the State.  Further, defendant objected *only* when the prosecution asked Ray, "What is your independent expert opinion?"  "Generally speaking, the appellate courts of this state will not review a trial court's decision to admit evidence unless there has been a timely objection. . . .  [, which] must be contemporaneous with the time such testimony is offered into evidence."  *State v. Ray*, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) (internal citations and quotation marks omitted).  Therefore, we review only the testimony to which defendant objected.

Q.   Based on your training and experience in the field of forensic chemistry and your employment at the CMPD crime lab as well as other labs prior to that and your review of the file in this case, did you have a chance to form your own independent expert opinion as to the identity of the substance in control number 16826?

A.   Yes, I did.

Q.   What is your independent expert opinion?

[DEFENSE COUNSEL]:  Objection, your Honor.  I don't need to be heard further.

THE COURT:  Yes, ma'am.  Objection overruled, you may answer.

A.   My conclusion was that the substance was cocaine.

Q.   Is that still your opinion currently?

A.   Yes, it is.

Based on defendant's arguments at the earlier voir dire hearing, it is clear that this objection was based on the Confrontation Clause.

Defendant argues that this rendering of Ray's expert opinion on a substance she did not personally test or observe being tested violated his right to confront witnesses against him.  We disagree.  As we stated above, when an expert gives an opinion, the opinion is the substantive evidence and the expert is the witness whom the defendant has the right to confront.  In accordance with Rule of Evidence 703, Ray gave her expert opinion that was based upon facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon

the subject." N.C. R. Evid. 703. The prosecutor laid the foundation for the Rule 703 testimony:

> Q. And are these tests [color test, melting point, and GCMS] standards such that other experts in the field of forensic chemistry would rely upon them in performing [sic] the opinion as to the identity of a chemical substance?
>
> A. Yes, they are.

Further, the prosecutor established that Ray's opinion was her own, independently reasoned opinion—not "surrogate testimony" parroting the testing analyst's opinion. *See Bullcoming,* ___ U.S. at ___, 131 S. Ct. at 2710.

> Q. And for trial today were you asked to review the chemical analysis that was performed on Item Number 9, control number 16826?
>
> A. Yes, I did.
>
> Q. And did you do that review?
>
> A. Yes.
>
> Q. And what complaint number is associated with that, this case and that control number?
>
> A. The complaint number is 20070516223000.
>
> Q. And what control number is that?
>
> A. 200716826.
>
> Q. When you conducted this peer review, specifically what documents did you review?
>
> A. I reviewed the drug chemistry worksheet or the lab

-18-

> notes that the analyst wrote her notes on and the data that came from the instrument that was in the case file and then I also reviewed the data that was still on the instrument and made sure that was all there too.

As part of her review, Ray analyzed the "reviewable data" generated by the GCMS machine. Ray testified that the machine internally records the data and there is no way to make alterations to what is recorded. As she stated on cross-examination, the GCMS machine produces a graph based on its testing, from which Ray was able to determine "the molecular weight of the substance and how it breaks down and relate that back to the chemical structure." Ray compared the machine-produced graph to the data from the lab's sample library and concluded that the substance was cocaine.

This expert opinion, from Ray's own analysis of the data, constituted the substantive evidence being presented against defendant. *See Fair*, 354 N.C. at 162, 557 S.E.2d at 522. Therefore, the testifying expert was the witness whom defendant had the right to confront. *Id.* Defendant was able to cross-examine Ray fully concerning all aspects of her testimony. *See id.* Indeed, the cross-examination made abundantly clear for the jury that Ray "didn't personally observe any of these tests being done" and that she "ha[d] to assume [the testing analyst] followed the standard operating procedures."[3] Accordingly, the admission of Ray's expert

---

[3] Viewing the separate opinions in *Williams v. Illinois* in their totality, we suggest that prosecutors err on the side of laying a foundation that establishes compliance with Rule of Evidence 703, as well as the lab's standard procedures, whether the testifying

opinion did not violate defendant's right to confront witnesses against him.

Even assuming admission of Ray's expert opinion violated defendant's rights under the Confrontation Clause, the alleged error was harmless, providing a separate, adequate, and independent state law ground for the judgment of the Court. "When violations of a defendant's rights under the United States Constitution are alleged, harmless error review functions the same way in both federal and state courts." *Lawrence*, 365 N.C. at 513, 723 S.E.2d at 331. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C.G.S. § 15A-1443(b) (2011).

The arresting officer testified that when he found the plastic baggy containing a white substance, he picked it up and asked defendant, "What's this?" The officer further testified that defendant acknowledged it was his cocaine—and asserted it was for personal use and he was not dealing drugs. In the same compartment as the plastic baggy containing the white substance, the officer also found "eight separate plastic sandwich baggies, similar to the plastic baggy that was wrapped around the [white substance] [he] found." The officer testified that cocaine is typically packaged for sale in sandwich baggies. Defendant's explanation

---

analyst observed or participated in the initial laboratory testing, what independent analysis the testifying analyst conducted to reach her opinion, and any assumptions upon which the testifying analyst's testimony relies.

at trial for his possession of the substance was that he had stopped at a gas station to buy some milk and three men "knocked on the [car] door and they handed me [the substance and baggies] and told me give us money for this." He stated he was afraid he was being robbed, so he handed the men a portion of the $500 in cash from his pockets but "never imagined that it was drugs or something like that." Defense counsel elicited a statement from the arresting officer that the substance "appears to be powder cocaine." Under these facts, in which defendant told a law enforcement officer that the substance was cocaine and defense counsel elicited testimony that the substance appeared to be cocaine, any possible error in allowing the expert opinion was harmless. *See State v. Nabors*, 365 N.C. 306, 312-13, 718 S.E.2d 623, 627 (2011).

The Sixth Amendment guarantees that " '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Crawford*, 541 U.S. at 38, 124 S. Ct. at 1357 (quoting U.S. Const. amend. VI). CMPD forensic chemist Tracey Ray analyzed the data pertaining to the seized substance and gave her independent expert opinion that the substance was cocaine. Defendant had the opportunity to cross-examine the witness against him: Tracey Ray. The admission of an independent expert opinion based on the expert's own scientific analysis is not the type of evil the Confrontation Clause was designed to prevent. We find no error and reverse the Court of Appeals.

REVERSED.

Justice BEASLEY took no part in the consideration or decision of this case.

Justice HUDSON dissenting.

The majority opinion here begins by declaring that the expert gave her opinion "based upon her independent analysis of testing performed by another," without a clear explanation of why this matters in the context of Confrontation Clause analysis.[4]   The majority goes on to cite *Williams v. Illinois* for the proposition that "a qualified expert may provide an independent opinion based on otherwise inadmissible out-of-court statements."   The Court in *Williams* did not hold—nor do any other cases—that expert testimony like that here, based entirely on testing done by an absent analyst for the sole purpose of prosecuting this defendant, would be free of a Sixth Amendment Confrontation Clause violation if the expert claimed her opinion was "independent," when the record shows manifestly that it was not.   Nor did the Court in *Williams* hold, as the majority here does, that "when an expert states her own opinion, without merely repeating out-of-court statements, the expert is the person whom the defendant has the right to cross-examine."   In my view, the Supreme Court cases mean instead that the

---

[4] The independence, or lack thereof, of the testifying expert's opinion is only relevant to the Confrontation Clause analysis if it is first established that the lab report underlying the expert's testimony is itself testimonial (it is) and that the analyst who prepared the report did not testify (she did not).

testimony Agent Ray gave here that the substance was cocaine—based on testing done by an absent analyst (Agent Mills) who was not cross-examined by defendant—violated defendant's right to confront Mills, as protected by the Sixth Amendment and explained in Supreme Court decisions from *Crawford* to *Williams*. Because I also conclude that this constitutional error is not harmless beyond a reasonable doubt, I would grant defendant a new trial. I respectfully dissent.[5]

Before engaging the substantive issue here, I believe a review of recent Confrontation Clause jurisprudence is in order, if only to highlight how far afield the majority has gone. In *Crawford v. Washington* the United States Supreme Court rejected as unsound its own earlier decision in *Ohio v. Roberts*, 448 U.S. 56, 65-66, 100 S. Ct. 2531, 2538-39 (1980). Instead, the Court concluded in *Crawford* that a defendant's Confrontation Clause rights are violated when out-of-court testimonial statements are admitted without a showing that the declarant is

_____

[5] Before reaching the "dispositive issue," the majority addresses procedure and concludes that defendant has not adequately objected to the admission of Ray's testimony, which it says should be reviewed for plain error. In my opinion, this discussion, and any effort to couch this case in terms of plain error, is entirely misplaced. The State did not argue that review here should be for plain error; its argument heading in the brief is: "The Court of Appeals erred by finding any error was not harmless beyond a reasonable doubt." The argument then addresses what it appropriately notes is the proper standard for review of alleged constitutional error. Moreover, the State has not contended that the issue was not adequately preserved. Indeed, the trial court, at defendant's request, conducted voir dire on the admissibility of the testimony and reports and ruled the reports out, but found the testimony allowable. On direct examination, at the only point the witness was asked for an "opinion," defense counsel objected. After the testimony was admitted and cross-examined, defense counsel moved to strike the expert's testimony, and the transcript reveals several pages of colloquy before the motion to strike was denied. As such, defendant has preserved as well as he could the one issue that matters here, to wit, Agent Ray's opinion (based on another's testing) that the substance was cocaine.

unavailable to testify and that the defendant had a prior opportunity to cross-examine that person.  *Crawford*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). In *Roberts* the Court allowed hearsay testimony if it possessed "adequate 'indicia of reliability,' " 448 U.S. at 66, 100 S. Ct. at 2539; however, in *Crawford* the Court stated that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the crucible of cross-examination," 541 U.S. at 61, 124 S. Ct. at 1370.  In rejecting the reliability standard the lower courts had applied in the case, the Supreme Court wrote in *Crawford* that "[e]ach of the courts also made assumptions that cross-examination might well have undermined."  *Id.* at 66, 124 S. Ct. at 1372.

The Supreme Court declined to announce a complete definition of "testimonial" in *Crawford*.  *Id.* at 68, 124 S. Ct. at 1374.  Relevant here, however, the Supreme Court subsequently addressed the meaning of "testimonial" when discussing certified lab reports identifying a substance as cocaine in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307-08, 129 S. Ct. 2527, 2530-31 (2009).  There the Court concluded that "[lab] analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment."  *Id.* at 311, 129 S. Ct. at 2532.  Again, the Court placed heavy emphasis on the power of cross-examination to expose weaknesses in such testimony: "Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony."  *Id.* at 319, 129 S. Ct. at

2537. "Like expert witnesses generally, an analyst's lack of proper training or deficiency in judgment may be disclosed in cross-examination." *Id.* at 320, 129 S. Ct. at 2537. *Melendez-Diaz* establishes that absent a stipulation or a statutory notice-and-demand waiver, a lab report of this type may not be admitted "without offering a live witness competent to testify to the truth of the statements made in the report." *Bullcoming v. New Mexico,* ___ U.S. ___, ___, 131 S. Ct. 2705, 2709 (2011).

In *Bullcoming*, the Supreme Court then addressed the next logical question flowing out of *Melendez-Diaz*, specifically

> whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.

*Id.* at ___, 131 S. Ct. at 2710. Although the expert in *Bullcoming* was competent to testify to the lab processes, the Court held that such "surrogate testimony" did not satisfy the requirements of the Confrontation Clause. *Id.* at ___, 131 S. Ct. at 2710. The lower appellate court had held that such testimony was permissible because the analyst had " 'simply transcribed the resul[t] generated by the gas chromatograph machine' " and the real witness against the defendant was the actual machine. *Id.* at ___, 131 S. Ct. at 2714 (alteration in original). The Supreme Court rejected this argument, reasoning that the testing analyst's report was "more than a machine-

generated number." *Id.* at \_\_\_, 131 S. Ct. at 2714. The Court noted that the testing

analyst's affidavit certified facts such as an unbroken chain of custody, the

particular test performed, and the analyst's adherence to protocol in performing

that test. *Id.* at \_\_\_, 131 S. Ct. at 2714. "These representations, relating to past

events and human actions not revealed in raw, machine-produced data, are meet for

cross-examination." *Id.* at \_\_\_, 131 S. Ct. at 2714. The State also argued that its

proposed testifying expert could properly testify because he was an expert with

respect to the gas chromatograph machine and the laboratory's procedures. *Id.* at

\_\_\_, 131 S. Ct. at 2715. The Court disagreed, recognizing that cross-examination of

a surrogate analyst would be ineffective to expose any weaknesses in the lab

reports, thus failing to satisfy the Confrontation Clause:

> But surrogate testimony of the kind [the testifying expert]
> was equipped to give could not convey what [the testing
> analyst] knew or observed about the events his
> certification concerned, *i.e.*, the particular test and testing
> process he employed. Nor could such surrogate testimony
> expose any lapses or lies on the certifying analyst's part.

*Id.* at \_\_\_, 131 S. Ct. at 2715 (footnote omitted). Ultimately, the Supreme Court

concluded that a defendant's right "is to be confronted with the analyst who made

the certification, unless that analyst is unavailable at trial, and the accused had an

opportunity, pretrial, to cross-examine that particular scientist." *Id.* at \_\_\_, 131 S.

Ct. at 2710.

Most recently, in *Williams v. Illinois* the Supreme Court granted certiorari to

address whether *Crawford* prohibits "an expert from expressing an opinion based on facts about a case that have been made known to the expert but about which the expert is not competent to testify," ___ U.S. ___, ___, 132 S. Ct. 2221, 2227 (2012) (plurality), or, as articulated by Justice Sotomayor in her concurrence in *Bullcoming*, to address the situation in which "an expert witness [is] asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence," *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part). In *Williams* an expert witness offered her opinion regarding a DNA match between samples analyzed in two separate reports, one of which was not entered into evidence. ___ U.S. at ___, 132 S. Ct. at 2229-30. The opinion in *Williams* revealed a fractured court, but a majority—the four Justice plurality and Justice Thomas—found that the underlying report was not testimonial, meaning there was no Confrontation Clause violation. *Id.* at ___, 132 S. Ct. at 2242-44 (plurality); *id.* at ___, 132 S. Ct. at 2255 (Thomas, J., concurring in the judgment).[6] Importantly, the plurality distinguished the earlier cases from the

---

[6] Though the majority acknowledges the split opinion in *Williams*, the majority still appears to ascribe precedential value to the plurality opinion, classifying it as the narrowest grounds among the concurring opinions. I disagree. Neither the plurality's reasoning nor Justice Thomas's concurrence is narrower; they are simply different. Justice Thomas agreed with the plurality that the report was not testimonial, but for a different reason—insufficient formality. On the other hand, he agreed with the four dissenters that the Cellmark report was offered for the truth of the matter asserted therein. Thus, I believe the only firm conclusions we can draw from *Williams* are that the lab report there was *not* testimonial and that five justices agreed it *was* offered for its truth. These conclusions appear to apply only to the precise facts in *Williams*. Because it is clear that the lab report here *was* testimonial, as well as offered for its truth, *Williams* gives us little

*Williams* testimony, in which the expert testified that the two DNA profiles were from the same person, not that either or both were accurate or true: "The Cellmark report is very different. It plainly was not prepared for the primary purpose of accusing a targeted individual." *Id.* at ___, 132 S. Ct. at 2243 (plurality). "In *Hammon* and every other post-*Crawford* case in which the Court has found a violation of confrontation right, the statement at issue had the primary purpose of accusing a targeted individual." *Id.* at ___, 132 S. Ct. at 2243 (plurality).

In the *Williams* plurality opinion, Justice Alito noted that the Court's conclusion to allow the testimony of the DNA expert

> is entirely consistent with *Bullcoming* and *Melendez–Diaz.* In those cases, the forensic reports were introduced into evidence, and there is no question that this was done for the purpose of proving the truth of what they asserted: in *Bullcoming* that the defendant's blood alcohol level exceeded the legal limit and in *Melendez–Diaz* that the substance in question contained cocaine. Nothing comparable happened here.

*Id.* at ___, 132 S. Ct. at 2240 (plurality). But in the case before us, something quite comparable happened—though the report itself was not admitted, its essential contents were delivered via surrogate testimony that depended entirely upon review of the reports and involved no independent analysis. Further, it cannot be questioned that the primary purpose of the lab report here was to accuse a targeted individual. As such, the result should be the same in that the testimony here

---

additional guidance.

violated the Sixth Amendment Confrontation Clause, as in *Bullcoming* and

*Melendez-Diaz*.

Were there any indication in the record that Agent Ray did "independent

analysis," I could perhaps agree with the majority. There is none. She testified on

direct examination, based entirely on her review of tests and notes by Agent Mills:

> Q. And for trial today were you asked to review the chemical analysis that was performed on Item Number 9, control number 16826?
>
> A. Yes, I did.
>
> . . . .
>
> Q. When you conducted this peer review, specifically what documents did you review?
>
> A. I reviewed the drug chemistry worksheet or the lab notes that the analyst wrote her notes on and the data that came from the instrument that was in the case file and then I also reviewed the data that was still on the instrument and made sure that was all there too.

She then responded that, based upon this review, her "independent opinion" was

that the substance "was cocaine." But, on cross-examination she testified, among

other things, to the following:

> Q. All right. Now just to go back to the beginning, you have done no testing of your own on Item Number 9; correct?
>
> A. No, I have not.
>
> Q. And so any opinions you give in court about the nature of this substance are based entirely on testing

done by someone else?

A.  Correct.

Q.  And you were not present when those tests were
performed, were you?

A.  No, I was not.

Q.  And you didn't even work there until
approximately two years later; correct?

A.  Correct.

She acknowledged repeatedly that she could not personally verify anything about

the way the tests were done and said, "I only know of what's on the drug

worksheet," and "I can only say according to the worksheet."  "[T]he [Confrontation]

Clause does not tolerate dispensing with confrontation simply because the court

believes that questioning one witness about another's testimonial statements

provides a fair enough opportunity for cross-examination." *Bullcoming*, ___ U.S. at

___, 131 S. Ct. at 2716 (majority).  Because the expert here (Agent Ray) simply

viewed and agreed with the test results of another (Agent Mills), while she

performed no testing and was not present for those tests, I must conclude her

testimony violates the Confrontation Clause when analyzed according to the

jurisprudence of *Crawford*, *Melendez-Diaz*, *Bullcoming*, and *Williams*.  The

defendant here had the right under the Sixth Amendment Confrontation Clause to

cross-examine Mills, not just Ray.

As stated above, having implicitly acknowledged that the report was

testimonial and knowing the testing analyst was absent, the majority asserts that Agent Ray offered an independent opinion on the identity of the substance tested based on the lab reports. As I understand the opinion, the only "evidence" the majority points to in support of this holding is the questioning by the State at trial. Agent Ray was asked, "What is your independent expert opinion?" She answered that "the substance was cocaine." However, careful review of the testimony, both on direct and cross-examination, demonstrates that her opinion was in no way independent—all her knowledge and opinions about the testing process and the substance were based entirely on the review and analysis by Agent Mills, who had left the lab two years before Ray's employment even began. Ray testified that she conducted an "administrative" and a "technical" review of Mills's file (which the prosecutor characterized in his questions as a "peer review" of the testing analyst's work), including reading the report notes and results off the machine. Agent Ray was not asked about and did not explain any "analysis" that she performed; instead, she explained that her administrative and technical reviews were "to make sure there is [sic] no mistakes," as with spelling or data input, and to verify that she would have reached the same conclusion based on the data generated by the testing agent. In my view, this is not an "independent" opinion as that term is used by the Supreme Court.

The majority states that "[a]s part of her review, Ray analyzed the 'reviewable data' generated by the GCMS machine. Ray testified that the machine

internally records the data, and *there is no way to make alterations to what is recorded.*" (Emphasis added.) The majority fails to consider how the original testing analyst may have handled or altered the substance *before* it was placed in the machine, or how it was entered into the machine. "Forensic evidence is not uniquely immune from the risk of manipulation." *Melendez-Diaz*, 557 U.S. at 318, 129 S. Ct. at 2536.

> Confrontation is one means of assuring accurate forensic analysis. While it is true, as the dissent notes, that an honest analyst will not alter his testimony when forced to confront the defendant, the same cannot be said of the fraudulent analyst. Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony. And, of course, the prospect of confrontation will deter fraudulent analysis in the first place.
> Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. Serious deficiencies have been found in the forensic evidence used in criminal trials. . . . Like expert witnesses generally, an analyst's lack of proper training or deficiency in judgment may be disclosed in cross-examination.

*Id.* at 318-19, 129 S. Ct. at 2536-37.[7] I would hold that the type of "peer review" conducted by Agent Ray in this case is constitutionally deficient because it brings in

---

[7] In North Carolina recent events have proved that these concerns about forensic testing are more than just mere speculation. *See* Chris Swecker & Michael Wolf, *An Independent Review of the SBI Forensic Laboratory* 4 (2010) ("This report raises serious issues about laboratory reporting practices from 1987-2003 and the potential that information that was material and even favorable to the defense of criminal charges filed was withheld or misrepresented."); *see also* Paul C. Giannelli, *The North Carolina Crime Lab Scandal*, 27 Crim. Just., Spring 2012, at 43, 43 ("This failure of the North Carolina criminal justice system is breathtaking.").

key substantive evidence from the lab report without allowing for the type of cross-examination required by the United States Supreme Court to avoid a violation of a defendant's Confrontation Clause rights.

The majority also states that "the testifying expert was the witness whom the defendant had the right to confront. Defendant was able to cross-examine Ray fully concerning all aspects of her testimony." But the United States Supreme Court has stated that "the [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2716. Because she was not present, Agent Ray could not possibly testify to the procedures followed, or not followed, by Agent Mills, the nontestifying analyst; cross-examination of Agent Ray is not a "fair enough opportunity for cross-examination" under the Confrontation Clause. *Id.* at ___, 131 S. Ct. at 2716. Again, the defendant had the right to cross-examine Agent Mills.

The majority correctly states that "raw, machine-generated data" are neither hearsay nor testimonial. The majority relies heavily on the fact that Agent Ray looked at such "raw, machine-generated data" when forming her allegedly independent opinion. In doing so, the majority oversimplifies Agent Ray's review process and testimony and glosses over the portions that most clearly implicate the Confrontation Clause. Agent Ray did not simply look at graphs produced from

machines and testify to those results.  Rather, she testified:

> Q.      When you conducted this peer review, specifically what documents did you review?
>
> A.       I reviewed the drug chemistry worksheet or the lab notes that the analyst wrote her notes on and the data that came from the instrument that was in the case file and then I also reviewed the data that was still on the instrument and made sure that was all there too.

Immediately after this exchange, Agent Ray was asked to "list the tests that were conducted on the substance in control number 16826[.]"  She responded, "A color test was performed, a melting point was performed, and then the GCMS was used."  She was later asked, "[C]an you tell us what her result appears to have been?"  She answered, "[O]n the color test it has a positive sign with a circle around it and then says blue underneath that."  Agent Ray did not simply evaluate raw data—she reviewed the lab report and *testified to some of its contents*, specifically which tests the nontestifying analyst conducted and the results of those tests.  Because Agent Ray was not present for those tests, she had to rely entirely on the certification of the testing analyst that those tests were in fact performed, and performed in compliance with operating procedure and without error.  Because that certification "reported more than a machine-generated number . . . . [t]hese representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination."  *Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2714.  Here, as in *Crawford* (and *Bullcoming*), it is clear from

Agent Ray's testimony that she, and now the majority, have relied on "assumptions that cross-examination might well have undermined." *Crawford*, 541 U.S. at 66, 124 S. Ct. at 1372.[8] Had Agent Ray simply been provided the graphs and data printouts themselves, and come to conclusions based on that raw data, there might not have been a confrontation problem. *See Williams*, ___ U.S. at ___, 132 S. Ct. at 2240; *but see Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2715 ("[T]he comparative reliability of an analyst's testimonial report drawn from machine-produced data

---

[8] Ray testified, for example:

> Q.    You have to assume she followed the standard operating procedures, correct?
>
> A.    Correct.
>
> Q.    Can you personally verify anything about the conditions of her lab suite at the time?
>
> A.    No, I cannot.
>
> Q.    Can you verify anything about her state of mind at the time?
>
> A.    No, I cannot.
>
> Q.    Can you verify that she wore gloves when she performed these tests?
>
> A.    No, I cannot.
>
> Q.    Can you verify how many different samples she tested that day?
>
> A.    No.
>
> Q.    Have you run a GCMS on this substance?
>
> A.    No, I did not.

-35-

does not overcome the Sixth Amendment bar."). But as soon as she testified to past events memorialized in the testing analyst's lab notes and drug worksheet, Agent Ray implicated the Confrontation Clause.

Further, even if she had only relied on raw data in forming her opinion, Agent Ray's expert opinion would be relevant only if the State provided the foundation for the data, such as how the data were generated—a foundation that would presumably require testimony from the nontestifying analyst anyway. *See Williams*, ___ U.S. at ___, 132 S. Ct. at 2241 (identifying as a safeguard against circumvention of the Confrontation Clause the rule that "if the prosecution cannot muster any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert's testimony, then the expert's testimony *cannot* be given any weight by the trier of fact" (emphasis added)). In *Williams*, this safeguard was satisfied by "independent circumstantial evidence showing that the Cellmark report was based on a forensic sample taken from the scene of the crime." *Id*. at ___, 132 S. Ct. at 2240-41. Here, without entering the report itself into evidence or allowing Agent Ray to testify from the report about chain-of-custody information, there is no independent evidence establishing that the data Agent Ray reviewed were generated in fact from the sample taken from the crime scene.

Agent Ray's testimony is also legally insufficient to prove that the substance was cocaine because her opinion was based on assumptions that the substance was properly logged and handled, the tests properly conducted, and the results properly

recorded.  Effectively, her opinion is "*if* everything was done properly, and *if* the report is accurate, *then* the substance is cocaine."  Without other evidence to confirm those assumptions, there is no actual proof that defendant possessed cocaine.

While the majority acknowledges that the North Carolina Rules of Evidence "must comport with constitutional requirements," the substance of its opinion does not follow that mandate.  Instead, the majority opinion relies heavily on the Rules of Evidence, which are irrelevant to the determination of whether defendant's Confrontation Clause rights have been violated.[9]  As stated by the United States Supreme Court:  "Leaving the regulation of out-of-court statements to the law of

---

[9] At the heart of the majority opinion here is the assertion that as long as a testifying expert is cross-examined, the Confrontation Clause is satisfied.  The majority appears to rely on *State v. Fair*, 354 N.C. 131, 557 S.E.2d 500 (2001), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332 (2002), and *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984), *cert. denied*, 471 U.S. 1009, 105 S. Ct. 1877 (1985), for this assertion.  These cases were based entirely on the now-discredited reliability framework established by the United States Supreme Court in *Ohio v. Roberts*, 448 U.S. at 65-66, 100 S. Ct. at 2538-39.  As pointed out by the majority, *Roberts* was explicitly overturned by the United States Supreme Court in *Crawford*: "The [*Roberts*] framework is so unpredictable that it fails to provide meaningful protection from even core confrontation violations."  541 U.S. at 63, 124 S. Ct. at 1371.  *See also Whorton v. Bockting*, 549 U.S. 406, 416, 127 S. Ct. 1173, 1181 (2007) ("The *Crawford* rule is flatly inconsistent with the prior governing precedent, *Roberts*, which *Crawford* overruled.").  Relying on *Fair* and *Huffstetler*, the majority concludes that because " '[i]t is the expert opinion itself, not its underlying factual basis, that constitutes substantive evidence,' " *Fair*, 354 N.C. at 162, 557 S.E.2d at 522, and that so long as the information relied upon by the testifying expert "[allows] the factfinder 'to understand the basis for the expert's opinion and to determine whether that opinion should be found credible,' " *Huffstetler*, 312 N.C. at 108, 322 S.E.2d at 121, there is no Confrontation Clause violation.  To the extent that *Huffstetler* and *Fair* rely on the rejected *Roberts* framework, they cannot be considered good law and have no place in our discussion of this issue.

evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364. "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence . . . ." *Id.* at 61, 124 S. Ct. at 1370. Defendant did not challenge the testimony here for violations of the Rules of Evidence but because it violated his Sixth Amendment right to confront witnesses against him. The North Carolina Rules of Evidence have no place in this discussion.

Finally, the majority has failed to set out a clear framework for lower courts to use in analyzing this type of complicated, fact-specific Confrontation Clause question. Part of our charge as a Court is to provide guidance to lower courts; thus, I have set out a methodical approach for cases in which an expert witness testifies about the results of a lab report, regardless of whether the underlying report is ultimately admitted into evidence. Viewing recent United States Supreme Court precedent as a whole, I apply a four-part analysis to address these types of cases.

First, we determine whether the underlying lab report is testimonial—if it is not, there is no Confrontation Clause violation. *Compare Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2217 (rejecting the prosecution's argument that the lab reports were not testimonial because, according to the Court, "[a] document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial"), *with Williams*, ___ U.S. at ___, 132 S. Ct. at 2243 (deciding that the

lab report in question was not testimonial because "the primary purpose of the Cellmark report, viewed objectively, was not to accuse [the defendant] or to create evidence for use at trial") (plurality).

Second, we examine whether the testifying expert personally conducted the testing, and if not, whether the State has shown that the nontestifying analyst is unavailable and that the defendant had a prior opportunity to cross-examine. If the original testing analyst testifies, there would be no Confrontation Clause violation because she could be cross-examined on the procedures and protocols she followed in conducting the tests. *See Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2715. But if the original testing analyst does not appear as a witness, the State must show that she was unavailable and that defendant had a prior opportunity to cross-examine her. *See Melendez-Diaz*, 557 U.S. at 309, 129 S. Ct. at 2531. In the absence of such a showing, or a stipulation or waiver, neither the report itself nor the report's conclusions can be properly received as evidence without running afoul of the Confrontation Clause. *See id.* at 329, 129 S. Ct. at 2542; *see also Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2715.

Third, if the testifying analyst is relying on another analyst's reports, we decide whether the testifying expert offered an independent opinion based on the lab report or merely acted as a surrogate witness. The decision in *Bullcoming* appears to leave room for an expert who did not conduct the testing in question to offer an "independent opinion" on the fact at issue. *See* ___ U.S. at ___, 131 S. Ct. at

2716 (noting that the State did not "assert that [the substitute expert] had any 'independent opinion' concerning Bullcoming's [blood alcohol content]"). But the opinion must be truly independent—"surrogate testimony" that brings in the absent analyst's test results and conclusions but cannot "convey what [the testing analyst] knew or observed about the events his certification concerned" is constitutionally insufficient. *Id.* at \_\_\_, 131 S. Ct. at 2715.

Fourth, we decide whether any error is reversible, applying the appropriate standard of review.

In applying that structure for analysis here, I would hold that: (1) the lab report underlying Agent Ray's statements was testimonial; (2) Agent Ray did not personally conduct the testing on the cocaine sample, and the State has not shown that the testing analyst (Mills) was unavailable and that defendant had a prior opportunity to cross-examine; (3) Agent Ray offered no independent opinion based on the lab report, merely communicating to the jury the lab report's contents under the guise of an expert opinion; and (4) the error was not harmless beyond a reasonable doubt.

In addressing the fourth component, the majority assumes for the sake of argument that admission of the testimony violated the Confrontation Clause, but finds the error harmless. As the majority acknowledges, the State bears the burden of proving that this constitutional error was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b) (2011). Under subsection 15A-1443(b), this Court

presumes such a violation to be prejudicial. *Id.* Our case law shows that in order to overcome this presumption, we often require "overwhelming" evidence of a defendant's guilt. *See, e.g.*, *State v. Bunch*, 363 N.C. 841, 845-46, 689 S.E.2d 866, 869 (2010) (" '[T]he presence of overwhelming evidence of guilt may render error of constitutional dimension harmless beyond a reasonable doubt.' " (alteration in original) (quoting *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988))). Here, because I would hold that Agent Ray's testimony was inadmissible, the only remaining evidence the State presented to prove that the substance was cocaine was (1) the officer's testimony that defendant admitted the fact to him at the scene of the crime, and (2) the officer's testimony that the substance "appear[ed] to be powder cocaine." This is hardly overwhelming evidence because it turns entirely on the officer's credibility.

Further, in its harmless error analysis the majority misapplies *State v. Nabors*, 365 N.C. 306, 718 S.E.2d 623 (2011). There, we applied the plain error standard of review, not constitutional harmless error review as we do here. There, unlike here, the defendant put on affirmative evidence that the substance in question was cocaine but that it belonged to someone else; in addition, he challenged the sufficiency of the evidence through a motion to dismiss, rather than by objecting to the testimony identifying the controlled substance. *Id.* at 312-13, 718 S.E.2d at 626-27. For sufficiency purposes we consider all of the evidence—including incompetent evidence—in the light most favorable to the State. Thus, in

*Nabors*, the defendant had to prove that the trial court's error in admitting lay testimony identifying a controlled substance had a probable impact on the outcome of trial, which he could only do by showing that all other competent and incompetent evidence, taken in the light most favorable to the State, was likely insufficient to support the charges. Here, by contrast, the State bears the burden of proving the constitutional error was harmless beyond a reasonable doubt. As such, these cases are entirely different.

Here the entire prosecution of defendant depends on Agent Ray's testimony to prove that the substance was cocaine. Without her testimony all that remains is an uncorroborated assertion by an officer on the witness stand that defendant agreed the substance was cocaine. Yet defendant also testified and denied that he had said the substance was cocaine. Here the credibility of all those statements must be weighed by the jury, by contrast to the sufficiency analysis in *Nabors*, in which only evidence supporting the State's case can be considered. The officer's testimony cannot be considered overwhelming under the constitutional harmless error standard we apply here. I conclude that the State has failed to show that the constitutional error here was harmless beyond a reasonable doubt and would hold that defendant should receive a new trial on the charge of possession of cocaine.

This case can be summarized quite simply: Agent Ray provided the only substantive evidence about the central issue in the case—the identity of a chemical substance found in defendant's possession—based entirely on test results produced

and reported by another analyst (Agent Mills), whom defendant had no opportunity to cross-examine. As such, he had no way to question the reliability of the process by which those test results were obtained. Under *Crawford*, *Melendez-Diaz*, *Bullcoming*, and *Williams*, this is a quintessential Sixth Amendment violation. "The Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination. The Confrontation Clause—like those other constitutional provisions—is binding, and we may not disregard it at our convenience." *Melendez-Diaz*, 557 U.S. at 325, 129 S. Ct. at 2540. Offering defendant the opportunity to cross-examine Agent Mills, not just Agent Ray, was required by the Sixth Amendment. Accordingly, I respectfully dissent.


Chief Justice PARKER joins in this dissenting opinion.